Myles R. DANNHAUSEN, as an individual natural person and a citizen of the United States,

Mary K. Dannhausen, as an individual natural person and a citizen of the United States,

Myles R. and Mary K. Dannhausen d/b/a Stagecoach Marine and Sporting Goods, a general partnership, Plaintiffs,

v.

The FIRST NATIONAL BANK OF STURGEON BAY, a federally chartered banking corporation,

Mr. Calvin Falk, individually and as President and Director of The First National Bank of Sturgeon Bay,

Mr. Robert Tilden, individually and as a director of The First National Bank of Sturgeon Bay,

Mr. Fred Peterson, individually and as a Director of The First National Bank of Sturgeon Bay,

Mr. Anthony L. Schlise, individually and as a Director of The First National Bank of Sturgeon Bay,

Mrs. Marion A. Staats, individually and as a Director of The First National Bank of Sturgeon Bay,

Mr. Robert L. Wolter, individually and as a Director of The First National Bank of Sturgeon Bay,

Mr. Lawrence E. Wulf, individually and as a Director of The First National Bank of Sturgeon Bay,

Mr. Gregory Stephan, individually and as Assistant Cashier and as Cashier of The First National Bank of Sturgeon Bay,

Mr. Kenneth W. Leaf, Regional Administrator of National Banks, Office of the Comptroller of the Currency and as an individual,

Mr. Harold J. Hansen, as the Legal Counsel to the Regional Administrator of National Banks, Office of the Comptroller of the Currency and individually,

Edwin C. Stephan, individually and as presiding judge of the County Court, Door County, Wisconsin,

Mr. Chester Stauffacher, Attorney, individually and as an officer of the Court,

J. W. Byers, Judge, individually and as Judge of the Brown County Court,

Robert Bloom, individually and as Comptroller of the Currency, and

Dr. H. D. Grota, individually and as a Director of The First National Bank of Sturgeon Bay, Defendants.

Civ. A. No. 79-C-1070.

United States District Court, E. D. Wisconsin.

March 18, 1982.

Bronson C. La Follette, Atty. Gen. by Theodore L. Priebe, Asst. Atty. Gen., Madison, Wis., for defendant Edwin C. Stephan.

Myles R. & Mary K. Dannhausen, plaintiffs pro se.

Chester C. Stauffacher, Sturgeon Bay, Wis., for defendants First Nat. Bank of Sturgeon Bay, Calvin Falk, Robert Tilden, Fred Peterson, Anthony L. Schlise, Marion A. Staats, Robert L. Wolter, Lawrence E. Wulf, Gregory Stephan, Chester Stauffacher, and H. D. Grota.

1. Included among the defendants are Calvin Falk, Robert Tilden, Fred Peterson, Anthony Schlise, Marion Staats, Robert Wolter, Law-

Joseph P. Stadtmueller, U. S. Atty. by Elizabeth Adelman, Asst. U. S. Atty., Milwaukee, Wis., and James P. Klapps, Asst. Director, Torts Branch, Civil Division, U. S. Dept. of Justice, Washington, D. C., Lester N. Scall, Office of Comptroller, Washington, D. C., and Ronald R. Glancz, Washington, D. C., for defendants Kenneth W. Leaf, Robert Bloom and Harold J. Hansen.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The pro se plaintiffs in this action, Myles R. Dannhausen, Mary K. Dannhausen, and Myles R. Dannhausen and Mary K. Dannhausen d/b/a Stagecoach Marine and Sporting Goods ("plaintiffs"), have filed a lengthy, rambling, and confusing complaint containing a large number of claims against a large number of defendants. Based on a reading of plaintiff's complaint, it appears to the Court as though plaintiffs have brought suit against nearly every person, corporation, judge, and agency in any way related with the financing or collapse of Stagecoach Marine and Sporting Goods.

With the aid of all the briefs filed in this action, it appears to the Court as though this action for damages is primarily a suit against The First National Bank of Sturgeon Bay ("Bank") and numerous of its directors and employees [1] ("Bank Directors and Employees"), brought under 12 U.S.C. § 1975, a provision of the Bank Holding Company Act which permits persons injured by a violation of 12 U.S.C. § 1972 to bring a treble damage action. In addition, as best as the Court can determine from a reading of the complaint, plaintiffs have alleged the following claims:

1. That the Bank and Bank Directors and Employees deprived the plaintiffs of their property and rights to due process of law under the Fourteenth Amendment under color of state law through a setoff of the plaintiffs' bank accounts against their obligations, in violation of 42 U.S.C. § 1983. (Complaint, ¶¶ 33, 40.)

rence Wulf, Dr. H. D. Grota, and Gregory Stephan.

2. That the Bank and Bank Directors and Employees deprived the plaintiffs of their property and rights to due process of law under the Fourteenth Amendment under color of state law by obtaining an ex parte temporary restraining order which prohibited the plaintiffs from disposing of their marine business inventory, in violation of 42 U.S.C. § 1983. (Complaint, ¶ 3 "Grounds for Federal Jurisdiction" and ¶ 45.)

3. That Judges J. W. Byers and Edwin C. Stephan conspired with the defendants' Bank, Bank Directors and Employees, and Chester Stauffacher to deprive the plaintiffs of their property and rights to due process of law under the Fourteenth Amendment under color of state law in connection with the Bank's obtainment of the ex parte restraining order which prohibited plaintiffs from disposing of their marine business inventory, in violation of 42 U.S.C. § 1983. (Complaint, ¶ 3 "Grounds for Federal Jurisdiction" and ¶¶ 45, 47, and 62.)

4. That Chester Stauffacher conspired with defendants Judges J. W. Byers and Edwin C. Stephan, the Bank, and Bank Directors and Employees to deprive the plaintiffs of their property and due process of law under the Fourteenth Amendment under color of state law, in connection with the above-mentioned ex parte restraining order, in violation of 42 U.S.C. § 1983. (Complaint, ¶¶ 47, 57, and 61–63.)

5. That the Comptroller of the Currency ("Comptroller") and three officials of that office—Kenneth W. Leaf, Harold J. Hansen, and Robert Bloom ("Comptroller Officials")—deprived the plaintiffs of their rights to due process of law and to equal protection of the laws by failing to enforce the National Banking Acts against the Bank and deprived the plaintiffs of equal protection of the laws by assisting the Bank in a suit between the plaintiffs and the Bank in state court, in violation of 28 U.S.C. § 2680(a), 5 U.S.C. § 552, 42 U.S.C. § 1985, and the Fifth Amendment. (Complaint, ¶¶ 62, 68–87, and 91.)

6. That in addition to depriving the plaintiffs of their property rights and rights to due process of law under the Fourteenth Amendment under color of state law in connection with the setoff and the ex parte restraining order, the Bank, Bank Directors and Employees, and Chester Stauffacher deprived the plaintiffs of their property rights and rights to due process of law in connection with the setoff and the ex parte restraining order. (Complaint, ¶ 3 "Grounds for Federal Jurisdiction," ¶¶ 45, 47, 61, and 62.)

7. That the Bank and Bank Directors and Employees breached their contract, made misrepresentations, made a wrongful setoff, and abused legal process in connection with the ex parte restraining order, which wrongs may be redressed in this court under the principles of pendant jurisdiction. (Complaint, ¶¶ 25, 26, 33, 40, and 45.)

8. Finally, that Chester Stauffacher abused legal process in connection with the ex parte restraining order, which wrong may be redressed in this court under the principles of pendant jurisdiction. (Complaint, ¶ 61.)

This matter is presently before the court on the motions of the several defendants to dismiss each of the eight claims enumerated above.[2] For the reasons that follow, those

---

2. On April 7, 1981, the plaintiffs filed a document entitled "Motion for Summary Judgment." This document is nothing more than an attempt to inextricably intertwine the issues in a case pending before Judge Warren with the issues in this action, see *United States of America v. Dannhausen,* C.A. No. 80–C–669 (E.D. Wis. June 2, 1981) (Warren, J.), and this document adds nothing to this action. As stated by Judge Warren at pages 9–10:

"Finally, the Court wishes to advise defendants [Dannhausens] that, in the future, if they bring motions which are as frivolous as the ones presented here, the Court will seriously consider taxing costs on them. The Court strongly advises defendants [Dannhausens] to seek assistance of competent legal counsel or, in the alternative, to make themselves familiar with the Rules of Federal Procedure before bringing any additional motions. In addition, defendants [Dannhausens] are hereby advised

motions will be granted and this case will be dismissed.

## I. *FACTS*

With the help of counsels' briefs and Judge James A. Martineau's decision in *First National Bank of Sturgeon Bay v. Stagecoach Junction, Inc.*, Case No. 3048 (Cir.Ct.Wis., Oct. 29, 1979), the Court determines that the following are the relevant facts.

Harold and Helen Dannhausen, the parents of the plaintiff Myles Dannhausen, were the proprietors of a small shopping center located in Egg Harbor, Wisconsin. Several of the shops located in the shopping center were owned by a corporation, Stagecoach Junction, Inc. ("Stagecoach Junction"). Included among the shops owned by Stagecoach Junction was a marine business. Harold and Helen Dannhausen and their son H. Richard Dannhausen owned all the stock in Stagecoach Junction. The land on which the shopping center was located was owned by Harold and Helen Dannhausen in their individual capacities. Stagecoach Junction thus paid rent to Harold and Helen Dannhausen.

In or about July of 1974, the plaintiffs Myles and Mary Dannhausen moved to Egg Harbor because of the ill health of Harold Dannhausen. They took over the management and operation of the shops owned by Stagecoach Junction, including the marine business.

Stagecoach Junction entered into a floor plan arrangement with the Bank for the purchase of inventory. Promissory notes were given to the Bank as part of this floor plan arrangement for the purchase of marine business inventory, with the Bank taking a security interest in the inventory. Eventually Stagecoach Junction reached its maximum credit line of $30,000 under its floor plan arrangement with the Bank.

After Harold Dannhausen's death on September 23, 1975, it became apparent that Stagecoach Junction was in very bad financial health. The Bank, which had loaned Stagecoach Junction money in the past pursuant to the arrangement described above, refused to extend any further credit. The attorney for Stagecoach Junction, moreover, advised that the corporation be placed in bankruptcy.

The Dannhausens, however, did not wish to abandon Stagecoach Junction's marine business and find employment elsewhere. Instead, the Dannhausens approached Curt Schwantes, a loan officer for the Bank, to discuss the possibility of the Bank's financing the purchase of the marine business from Stagecoach Junction. They were informed that the Bank would not consider financing the purchase of the marine business until Stagecoach Junction was out of the picture.

The Dannhausens thus began negotiations with Stagecoach Junction for the sale of the marine business, with Helen Dannhausen for the sale of the real estate upon which the marine business was located, and with the West Bank and Trust Company for financing of the real estate purchase. The Dannhausens purchased the corporate assets of Stagecoach Junction and began to manage the marine business under the name of Stagecoach Marine and Sporting Goods, a partnership. The Bank agreed to provide floor plan financing for the purchase of inventory to the partnership but only on the condition that the Dannhausens assumed liability for Stagecoach Junction's obligations to the Bank and the partnership's obligations to the Bank. Based on the Bank's representation that it would provide floor plan financing to the partnership, West Bank and Trust Company agreed to finance the real estate purchase.

On or about March 2, 1976, the plaintiffs entered into the above detailed financial agreement with the Bank. On this date

that if they file any additional material with this Court, they must do so under a separate heading with this case number only. The Court will not accept any correspondence from the defendants [Dannhausens] which is cap-

tioned with the case filed in Judge Reynold's court. Such dual captioning of cases only leads to greater confusion and is totally unnecessary under the circumstances."

they also paid off some of Stagecoach Junction's obligations and executed obligations in their own names to replace other Stagecoach Junction obligations. They also executed new obligations intended to cover the proceeds of a new loan to be used to purchase inventory. Either on this date or shortly thereafter, the Dannhausens opened savings and checking accounts at the Bank in their individual names and in the name of the partnership.

In June 1976, the Dannhausens sold their home and placed the proceeds into one of their business accounts at the Bank.

On or about July 23, 1976, the Dannhausens made the final payments on Stagecoach Junction's obligations. By this time the Dannhausens had either paid or assumed personal liability for over $40,000 of Stagecoach Junction's obligations.

On or about August 3, 1976, the Bank informed the plaintiffs that it would extend no further credit, declared the plaintiffs to be in default of several of their obligations, and employed a setoff of these obligations against the plaintiffs' business deposit accounts. Except for one $400 note, there was no application of funds against obligations not yet due, and Judge Martineau found that this particular setoff had been inadvertent. The setoff of the plaintiffs' accounts against their obligations led to a number of the plaintiffs' checks being dishonored for insufficient funds, which allegedly adversely affected the plaintiffs' reputations in the community.

At this point in time, the Dannhausens lodged a complaint against the Bank with the Regional Administrator of the Comptroller of the Currency. Although the Comptroller's Office apparently did make some sort of an investigation into the Bank's actions and practices, not much resulted from that investigation.

On or about September 17, 1976, the Dannhausens were served with a temporary restraining order that prohibited them from disposing of their marine business inventory without the permission of the Bank. The restraining order was granted ex parte by Judge Byers and was in effect for over nine months, until July 1977, at which point the Dannhausens were able to obtain an order from Judge William J. Duffy that lifted the restraining order.

The financial dealings between the plaintiffs and the Bank and the collapse of the plaintiffs' business have been the subject of other litigation. On September 17, 1976, the Bank filed suit against Stagecoach Junction, Stagecoach Marine and Sporting Goods, Myles Dannhausen, and Mary Dannhausen to collect on the remaining delinquent notes which had been executed by the Dannhausens. This case will be referred to as *First National Bank of Sturgeon Bay v. Stagecoach Junction, Inc.*, Case No. 3048 (Cir.Ct.Wis.1976). Subsequently, the plaintiffs filed suit on October 7, 1976, against the Bank, Calvin Falk, and Robert Tilden for breach of process, for damage to their reputations as a result of the wrongful setoff, and for abuse of legal process. This case will be referred to as *Dannhausen v. First National Bank of Sturgeon Bay*, Case No. 7617 (Cir.Ct.Wis.1976). On July 1, 1977, Judge Duffy granted the Dannhausens' motion to consolidate *Dannhausen v. First National Bank of Sturgeon Bay*, supra, with *First National Bank of Sturgeon Bay v. Stagecoach Junction, Inc.*, supra.

On September 14, 1977, the Bank amended its complaint in the consolidated action to add several new delinquent promissory notes which had been executed by the Dannhausens. The Dannhausens answered the Bank's amended complaint and counterclaimed for damages. The answer consisted of four affirmative defenses, while the counterclaim consisted of seven counts. Included among the seven counts were one count for the Bank's wrongful setoff of their bank accounts, one count for the damage to their reputation as a result of the wrongful setoff, and two counts for malicious abuse of process in connection with the ex parte temporary restraining order which had prevented the plaintiffs from disposing of their marine business inventory. Subsequently, on January 9, 1978, the Dannhausens added an eighth count to their counterclaim which also related to the ex parte temporary restraining order.

*First National Bank of Sturgeon Bay v. Stagecoach Junction, Inc.*, Case No. 3048, went to trial before Circuit Court Judge James A. Martineau on February 1, 1978. The trial lasted until March 22, 1978, requiring eleven full days of trial. On October 29, 1978, Judge Martineau rendered his decision in the case, finding that the Bank was entitled to recover from the Dannhausens on the notes which had been executed by them or their businesses, and that the Bank was entitled to dismissal with prejudice of the Dannhausens' eight-count counterclaim:

"As indicated, I determine that no act of the plaintiff bank was improper and that in no way should the bank be held responsible for the failure of the defendant's business and that the defendants are entitled to recover nothing from the bank on their counterclaim.

\* \* \* \* \* \*

"I find, therefore, that the plaintiff is entitled to recover from the defendants—and all of them—the following amounts:

| | |
|---|---|
| Principal | $25,035.09 |
| Interest computed to November 1st, 1979 | 8,094.20 |
| | $33,129.29 |

\* \* \* \* \* \*

"Consistent with the foregoing, it is ordered that the defendant's counterclaim is dismissed in its entirety and with prejudice."

On February 5, 1980, Judge Martineau issued his findings of fact, conclusions of law, and judgment in accordance with his earlier decision granting judgment in favor of the Bank and dismissing all of the claims of the Dannhausens. The following findings of fact and conclusions of law are relevant to the issues before this court.

## "FINDINGS OF FACT

"1. Plaintiff First National Bank of Sturgeon Bay is a banking corporation duly organized and operating under the applicable laws of the United States of America and the State of Wisconsin, and is duly chartered by the United States of America as a banking corporation, with its principal offices and place of business at 57 North Third Avenue, Sturgeon Bay, Wisconsin.

"2. Defendant Stagecoach Junction, Inc. is a business corporation which was duly organized and had been operating under the laws of the State of Wisconsin, with its principal place of business at Egg Harbor, Wisconsin; at all time relevant to the issues tried in the above-entitled action, defendants Myles Dannhausen and Mary Dannhausen, his wife, were the chief operating agents of defendant Stagecoach Junction, Inc.

"3. Defendants Myles Dannhausen and Mary Dannhausen, husband and wife, are natural persons residing at Egg Harbor, Wisconsin and are also the general partners in Stagecoach Marine and Sporting Goods, a general partnership organized and operating under the laws of the State of Wisconsin, with its principal place of business at Egg Harbor, Wisconsin; at all times relevant to the issues tried in the above-entitled action, defendants Myles Dannhausen and Mary Dannhausen, his wife, were such general partners d/b/a Stagecoach Marine and Sporting Goods.

"4. At various times in 1974, defendant Stagecoach Junction, Inc. gave to plaintiff a security interest in all sailboats, sailboat equipment and supplies, boats, and various other items of inventory collateral, whether new or used; said security interest was evidenced by duly filed financing statements.

"5. Defendants Myles Dannhausen and Mary Dannhausen, his wife, in their capacities as chief operating agents of Stagecoach Junction, Inc., and as general partners in Stagecoach Marine and Sporting Goods, executed promissory notes in favor of plaintiff First National Bank of Sturgeon Bay; as of February 5, 1980, 31 of such promissory notes were delinquent in the total principal amount of $25,-035.09 with interest due and owing on such notes according to the terms of the notes in the total amount of $8,726.31 as of February 5, 1980, for a total delinquency of $33,761.40, as of February 5, 1980.

"6. On August 3, 1976, the plaintiff set-off the total amount of $3,527.24 from the bank accounts maintained by Myles Dannhausen and Mary Dannhausen, d/b/a Stagecoach Marine and Sporting Goods, and applied the proceeds against the then-delinquent indebtedness of Myles Dannhausen and Mary Dannhausen, with the exception of promissory note # 22630 in the amount of $400.00, which was not due to become fully matured and delinquent until August 18, 1976; there still remained other delinquent obligations against which the $400.00 could have been applied.

\* \* \* \* \* \*

"8. For purposes of this litigation the same business entity has been represented by and known by the following names: Stagecoach Junction, Inc., Myles Dannhausen Associates, Stagecoach Marine, Stagecoach Marine and Sporting Goods, a partnership; when Myles Dannhausen and Mary Dannhausen, his wife, purchased the assets of Stagecoach Junction, Inc. sometime in March of 1976, they did in fact assume and agree to pay all of and be responsible for all of the Stagecoach Junction, Inc. obligations, liabilities, and agreements then existing.

\* \* \* \* \* \*

"10. At all times relevant to the issues tried herein, the plaintiff First National Bank of Sturgeon Bay:

"a. Exercised good faith and ordinary care.

"b. Did not negligently or fraudulently misrepresent to defendants or defendant's agents.

"c. Did not unlawfully commit any abuse of process in the conduct with respect to defendants or defendant's agents.

"11. No act of plaintiff First National Bank of Sturgeon Bay as described in defendant's counterclaims, was improper, and all defendants are not entitled to recover anything on their counterclaim, including Bill of Particulars damages for an allegedly improper restraining order.

"CONCLUSIONS OF LAW

"1. Plaintiff First National Bank of Sturgeon Bay is entitled to a money judgment as to the delinquent notes in the total principal amount of $25,035.09 and $8,726.31 interest as of February 5, 1980, for a total money judgment as of February 1, 1980 of $33,761.40, with legal interest on judgments after February 5, 1980, until date of payment plus statutory costs and disbursements as itemized in the attached Bill of Particulars which is approved by the Court.

"2. The counterclaim of defendants Myles Dannhausen and Mary Dannhausen, individually, and d/b/a Stagecoach Marine and Sporting Goods, a partnership, has no merit and must be dismissed in its entirety and with prejudice, including the claim by Bill of Particulars for alleged damages relating to an allegedly improper restraining order.

"3. Notwithstanding the inadvertent $400.00 set-off against an unmatured note which is considered to be negligible and inconsequential for purposes of the issues in this litigation, the bank's set-off action on August 3, 1976, is proper and justified as a matter of law and was not responsible for the alleged ultimate collapse of defendants' business operation.

\* \* \* \* \* \*

"5. None of the bank accounts involved in this litigation were immune or exempt from set-off by the First National Bank of Sturgeon Bay.

"6. At all times relevant to the issues tried herein, the plaintiff First National Bank of Sturgeon Bay exercised good faith and ordinary care, did not fraudulently or negligently misrepresent to defendants or defendant's agents, and did not commit any abuse of process."

On March 20, 1980, Stagecoach Marine and Sporting Goods and the Dannhausens appealed the judgment in *First National Bank of Sturgeon Bay v. Stagecoach Junction, Inc.*, supra, to the Wisconsin Court of Appeals.

On December 28, 1979, the Dannhausens commenced this action in federal court against the fifteen defendants named above.

## II. MOTIONS TO DISMISS VARIOUS CLAIMS

As noted above, this case is presently before the court on the motions of the several defendants to dismiss several of the plaintiffs' claims. The motions to dismiss will be grouped according to defendant(s).

### A. *Motion to Dismiss Brought by Judge Stephan*

Liberally construed, the plaintiffs claim that Judge Edwin Stephan and Judge J. W. Byers conspired with the defendants Bank, Bank Directors and Employees, and Chester Stauffacher to deprive the plaintiffs of their property and rights to due process of law under the Fourteenth Amendment under color of law in connection with the ex parte restraining order which prohibited the plaintiffs from disposing of their marine business inventory. Judge Stephan has moved the court to dismiss the action for failure of the complaint to state a claim upon which relief can be granted.[3] For the following reasons, Judge Stephan's motion will be granted.

In any action brought pursuant to 42 U.S.C. § 1983, there must be conduct committed by a person acting under color of state law and conduct which deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Unquestionably, actions taken by either Judge Stephan or Judge Byers are state actions for purposes of § 1983. See *Shelley v. Kraemer*, 334 U.S. 1, 14, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948).

■ To state a claim under § 1983 against Judge Stephan, the plaintiffs must show a violation of their constitutional rights by Judge Stephan. Paragraphs 47 and 62 of the complaint mention Judge Stephan. In particular, paragraph 47 states

that Judge Stephan is the only judge in Door County and that he is the father of Gregory Stephan who is an officer of the Bank and is one of the defendants to this action. Paragraph 62 states that Judge Stephan could not hear the plaintiffs' action to have the temporary restraining order lifted because of a conflict of interest, and, possibly as a result, that plaintiffs' action was not heard for nine months. Either considered separately or considered together, these paragraphs do not meet a minimum standard of particularity in detailing the alleged conspiracy between the defendants and Judge Stephan. More to the point, the complaint is impermissibly conclusory and vague concerning what acts, if any, Judge Stephan may have committed in furtherance of the conspiracy. See *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204 at 1207–1208 (7th Cir. 1980) (unpublished opinion), cert. denied 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980), citing *Sparkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979) (en banc) (Sprecher, J., concurring). Accordingly, the Court finds that the complaint does not state a cause of action under § 1983 against Judge Stephan.

■ Regardless of whether the § 1983 action against Judge Stephan framed in terms of conspiracy stated a claim for relief, it is a well established rule that a judge is not civilly liable for acts done in the exercise of his judicial function within the limits of his jurisdiction even if such acts were erroneous or illegal. See *Stump v. Sparkman*, 435 U.S. 349, 355–356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978), citing *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335, 20 L.Ed. 646 (1871). As Justice White wrote in *Stump*, supra, 435 U.S. at 359, 98 S.Ct. at 1106: "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Applying this authority to the material facts in the case at bar, the Court concludes that Judge Stephan is absolutely immune from liability, even in the event

---

**3.** Judge J. W. Byers, now deceased, was never served with process. See U. S. Marshal's Service Process Receipt and Return for J. W. Byers (filed Jan. 22, 1981).

plaintiffs could somehow show that Judge Stephan committed procedural error in recusing himself from hearing the plaintiffs' action to have the temporary restraining order lifted.

B. *Motion to Dismiss Brought by the Comptroller and Comptroller Officials*

As a result of the Dannhausens' complaint against the Bank for the latter's set-off of their accounts and discontinuation of their financing, the Comptroller's office conducted an inquiry into the Bank's actions. As noted above, little ever came of such inquiry.

In short, the plaintiffs contend that the Comptroller and Comptroller Officials (1) did not properly enforce the National Banking Acts against the Bank; (2) refused to provide the plaintiffs with information which they sought in connection with their state court trial against the Bank; (3) supplied the Bank with information which the Bank sought in connection with the state court trial between the Bank and the plaintiffs; and (4) conspired with the Bank to establish a defense for the Bank's actions. Each of these contentions will be discussed in turn.

■ The plaintiffs' contention that these defendants did not properly enforce the National Banking Acts against the Bank is unmeritorious. The plaintiffs simply cannot compel the Comptroller to enforce the National Banking Acts, since this would result in compelling the Comptroller to perform its discretionary functions. See *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218–220, 50 S.Ct. 320, 324–325, 74 L.Ed. 809 (1930); *Harmsen v. Smith*, 586 F.2d 156, 157–158 (9th Cir. 1978). Moreover, 28 U.S.C. § 2680(a) precludes suits against agencies of the United States involved in the regulation and examination of banks based on failure of the federal agency either to supervise, examine, or control adequately and properly the condition, performance, or operation of a bank, or failure of the federal agency to take proper and adequate measures to correct deficiencies

existing in the bank. See *Emch v. United States*, 474 F.Supp. 99 (E.D.Wis.1979), aff'd, 630 F.2d 523 (7th Cir. 1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981).

■ The plaintiffs' contention that these defendants refused to provide the plaintiffs with information which they sought in connection with their state court trial against the Bank is also unmeritorious. This contention does not state a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, because the plaintiffs have failed to set forth any of the jurisdictional grounds upon which they might base a claim that the Comptroller wrongfully denied them the information which they had sought.

Although records of the Comptroller pertaining to the examination and supervision of banks are confidential, 5 U.S.C. § 552(b)(8), the Comptroller, in recognition that parties in litigation may need certain records to resolve the issues in their action, has nonetheless provided for the release of relevant portions of bank examination reports. 12 C.F.R. § 4.19, dealing with the method for obtaining the release of relevant portions of bank examination reports, provides in pertinent part:

"* * * If the testimony of or the production of documents by an employee or former employee of the Comptroller is desired, an affidavit by the litigant or his attorney, setting forth the interest of the litigant and the testimony or documents desired must be submitted to the Comptroller before authorization will be granted. The employee's or former employee's authorization to testify or produce is limited to the authority granted by the Comptroller. * * *"

■ The plaintiffs' complaint is impermissibly vague concerning what steps, if any, plaintiffs took to comply with either the FOIA or the Comptroller's published rules setting forth how bank examination reports may be requested. Absent such jurisdictional allegations, the Court finds that the plaintiffs have failed to state a claim

under the FOIA for the denial of bank examination reports or live testimony from the Comptroller.

■ Moreover, the plaintiffs cannot state a claim against these defendants for withholding information on a theory of liability other than one based on the FOIA. Suits against the Comptroller and its employees based on withholding relevant information from the public are precluded by 28 U.S.C. § 2680(a). See *Emch v. United States*, 630 F.2d 523, 525–526 (7th Cir. 1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981).

■ The plaintiffs' third contention that these defendants supplied the Bank with information which the Bank sought in connection with the state court trial between the Bank and the plaintiffs in violation of their rights to due process of law or the equal protection of the laws is unpersuasive.

The existence and scope of the plaintiffs' due process rights depend on the resolution of three issues: (1) whether there was governmental action sufficient to invoke the guarantees of the Fifth Amendment; (2) whether the asserted interest is a liberty or a property interest to which there is a claim of entitlement under the due process clause; and (3) assuming that an entitlement is established, what process is due. See *Holbrook v. Pitt*, 643 F.2d 1261, 1276–1277 (7th Cir. 1981). It is both unnecessary and inappropriate for this Court to address the scope of the plaintiffs' due process rights, because the due process rights which they claim to have do not exist. Applying the above authority to the facts of this case, the first requirement of due process rights, governmental action sufficient to invoke the guarantees of the Fifth Amendment, is not met. The plaintiffs have failed to show a nexus between the actions of the Bank and the actions of the Comptroller. See *Musso v. Suriano*, 586 F.2d 59, 62 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 788 (1979). Moreover, the plaintiffs have advanced no support for their novel contention that they have a claim of entitlement to due process protection, cf.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and this Court can find no support for such a constitutionally protected property interest.

■ In the absence of an allegation of infringement of a fundamental right or the presence of a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate purpose. See *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978). Here, the plaintiffs claim unequal treatment from the fact that the Comptroller supplied the Bank with information which the Bank sought in connection with the state court trial between the Bank and the plaintiffs, but did not supply the plaintiffs with information which they sought in connection with the same trial. These defendants state that this unequal treatment resulted from the fact that the Bank made its request for information in accordance with the procedures in 12 C.F.R. § 4.19, while the plaintiffs did not. Applying the standard of review in *Durso v. Rowe*, supra, to the classification which resulted in unequal treatment in this action, the Court cannot say that a classification based on compliance and noncompliance with the pertinent portions of the FOIA is irrational. Indeed, such a classification goes to the heart of the FOIA's attempt to provide a workable formula which balances and protects all interests.

■ The plaintiffs' final contention that these defendants conspired with the Bank to establish a defense for the Bank's actions is without merit. To state a claim under 42 U.S.C. § 1985(3), the plaintiffs must allege a conspiracy to violate the plaintiffs' constitutional rights and a racial or some other type of class-based, invidiously discriminatory animus behind the conspirator's actions. See *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). Unquestionably, the plaintiffs have not alleged a racial or some other type of class-based, invidiously discriminatory ani-

mus behind these defendants' actions. And even if the plaintiffs had made this allegation, the complaint is impermissibly vague and conclusory in detailing what acts, if any, were committed by these defendants in the furtherance of the alleged conspiracy.

In summary, plaintiffs have failed to state a claim upon which relief can be granted with respect to any of the actions or inactions of the Comptroller and the Comptroller Officials relating either to the investigation of the Bank or to the plaintiffs' case against the Bank in state court. Accordingly, the motion to dismiss brought by the Comptroller and Comptroller Officials must be granted.

### C. *Motions to Dismiss Brought by the Bank and Bank Directors and Employees*

As noted in the introductory section to this decision, the plaintiffs have raised several claims against the Bank and Bank Directors and Employees.

### 1. *The Claim Based on Alleged Violations of the Bank Holding Company Act*

Section 1975 of the Bank Holding Company Act, 12 U.S.C. § 1975, permits persons injured by a violation of 12 U.S.C. § 1972 to bring a treble damage suit in federal court. 12 U.S.C. § 1972 prohibits tying arrangements and forbids banks to extend credit or furnish any service on condition "that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service." (§ 1972(1)(C))

The plaintiffs argue that the extension of credit to Stagecoach Marine and Sporting Goods for the purchase of Stagecoach Junctions' marine business conditioned upon their assumption of the debts of Stagecoach Junction constituted an unlawful tying arrangement in that it required "that the customer provide some additional credit * * to [the] bank * * * in connection with a loan * * *."

The Court has considered the plaintiffs' reading of 12 U.S.C. § 1972 and is unpersuaded by their argument that this section was intended to prohibit the actions taken by the Bank in this case. The purpose of § 1972 was to "prohibit anticompetitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." S.Rep.No. 91–1084, 91st Cong., 2d Sess. —— (1970), reprinted in 3 U.S.Code Cong. & Admin. News at 5519, 5535 (1970). It was not intended to interfere with the conduct of appropriate traditional banking practices, *Clark v. United Bank of Denver National Association*, 480 F.2d 235, 238 (10th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973), such as attempts by banks to protect their investments, *Sterling Coal Company v. United American Bank*, 470 F.Supp. 964, 965 (E.D.Tenn.1979).

The Court is of the opinion that the extension of credit to Stagecoach Marine and Sporting Goods for the purchase of the marine business from Stagecoach Junction, Inc., but extending credit only on the condition that the plaintiffs assume the debts of Stagecoach Junction, Inc., is not the type of anticompetitive practice within the purview of § 1972. Cf. *McCoy v. The Franklin Savings Association*, 636 F.2d 172, 175 (7th Cir. 1980). The Bank did not condition the extension of credit to Stagecoach Marine and Sporting Goods on plaintiffs' promise to refrain from dealing with other lenders. Indeed, the record shows that the Bank did not use its economic power to prohibit the plaintiffs from obtaining a loan from West Bank and Trust Company for the purchase of real estate from Helen Dannhausen. Unquestionably, the bank acted in an attempt to protect its loans to Stagecoach Junction, Inc. This attempt to protect their prior loans was appropriate in light of the following facts: (1) the negotiations for the purchase of the marine business from Stagecoach Junction, Inc., were between mother and son; (2) Myles Dannhausen played a large and active role in the events which

culminated in Stagecoach Junction Inc.'s poor financial condition; (3) the Bank's prior loans to Stagecoach Junction, Inc., were not adequately secured; and (4) there was a real question as to who was responsible for the payment of the Bank's prior loans. Judge Martineau's decision is especially informative on the latter three facts:

"The financial problems mostly arise from the fact that the business operated by the Dannhausens, and I use that word advisedly, never was a profitable business and required constant new financing and renewal of former notes executed by some one or more of the entities involved.

"The problem may be complicated by the fact that the defendants over the period of time involved in these transactions maintained about seven different bank accounts with the plaintiff in different names which, in a sense, traced the evolution of the entity which operated the business at Egg Harbor.

\* \* \* \* \* \*

" \* \* \* In the several years down to the set-off which precipitated the lawsuit, the business operated in the following names: Stagecoach Junction, Inc., Myles Dannhausen Associates, Stagecoach Marine, Stagecoach Marine and Sporting Goods, and finally a partnership consisting of Myles Dannhausen and his wife Mary.

"In many of the notes which are the subject of this lawsuit, it is impossible to determine whose signature appears as the agent or corporate officer, as the case may be, of the maker. For the several years immediately preceding the trigger date of August 3, 1976, Myles was in complete charge of the business. I assumed that all the signatures are his.

\* \* \* \* \* \*

"The identity of the several entities and of the bank accounts became so confusing that I believe the bank had a right to, and did, regard all the Dannhausen operations as a single entity, namely, "the Dannhausens." This came to mean Myles and Mary Dannhausen and primarily Myles. I find, therefore, that Myles Dannhausen, individually and also his wife, and his one or more partnership entities are liable for all the notes executed by the corporation and all the Dannhausen entities.

\* \* \* \* \* \*

"His business has never shown a profit of any consequence. It operated in the red virtually all of the time that Myles had charge of it. Myles, in his entire life, had never had active charge of any business that was profitable, and thus has no experience in operating a profitable business. In any event, I am not persuaded that anything the bank did or didn't do had an effect on the ultimate collapse and bankruptcy of the Dannhausen's business or caused any compensable damage.

"The bank examiners had warned that the Dannhausen business was in a precarious situation and that the bank's loans were not adequately secured and were unsound." (Decision signed Oct. 29, 1979, at 2, 3, 5, and 8.)

Therefore, applying the relevant authority to the facts of this case, it is the Court's opinion that the Bank's actions were exempt from the prohibitions of § 1972 and that the plaintiffs' claim based on alleged violations of the Bank Holding Company Act must be dismissed.

### 2. *The Claims Based on 42 U.S.C. § 1983*

In addition to their claim against the Bank based on alleged violations of the Bank Holding Act, the plaintiffs have raised § 1983 claims regarding the Bank's use of a setoff and the Bank's obtainment of an ex parte restraining order that prohibited the plaintiffs from disposing of their marine business inventory.

The plaintiffs contend that these defendants deprived the plaintiffs of their property and rights to due process of law under the Fourteenth Amendment under color of state law by using a setoff and obtaining an ex parte temporary restraining order that prevented the plaintiffs from disposing of their marine business inventory.

The two essential elements to a § 1983 action are: (1) conduct committed by a person acting under color of state law, and (2) conduct which deprived a person of rights, privileges, or immunities secured by the laws of the United States. Therefore, the Court's initial inquiry is whether either the setoff or the obtainment of an ex parte temporary restraining order constitutes conduct committed by a person acting under color of state law.

■ In *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the Supreme Court addressed the issue of whether a private warehouseman's sale of stored goods as permitted under a New York statute constituted action under color of state law. The New York statute at issue gave the warehouseman a lien for unpaid storage charges and permitted him to sell stored goods at a private sale for payment of those storage charges. The Supreme Court concluded that state action was absent, since neither levy nor seizure by state officials nor judicial proceedings of any sort was required. 436 U.S. 149, 160 n. 10, 98 S.Ct. 1729, 1735 n. 10, 56 L.Ed.2d 185. Applying the Supreme Court's theory of state action in *Flagg Brothers* to the facts in the case at bar, the Court concludes that the setoff by the Bank does not satisfy the under color of state law element. In the setoff of plaintiffs' debts against their bank accounts, there was neither judicial proceedings of any sort nor involvement by state officials at an enforcement level. Accordingly, the plaintiffs' § 1983 action for the Bank's use of a setoff must be dismissed.

The Court's next inquiry, therefore, is whether the state action requirement is satisfied by the Bank's obtainment of an ex parte temporary restraining order.

In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), the Supreme Court reaffirmed that private persons jointly engaged with state officials in the prohibited conduct are acting under color of state law for purposes of § 1983. The joint activity involved in *Adickes* was between private individuals and a police officer. Here, the joint activity complained of was between private individuals and a state court judge. This involvement by the state court judge establishes conduct committed by a person acting under color of law for purposes of § 1983. See *Brucar v. Rubin*, 638 F.2d 987, 992 (7th Cir. 1980); but cf. *Lugar v. Edmondson Oil Co., Inc.*, 639 F.2d 1058, cert. denied 452 U.S. 937, 101 S.Ct. 3078, 69 L.Ed.2d 951 (1981) (the test for whether conduct is committed by a person acting under color of state law is whether joint activity implies a usurpation or corruption of official power or surrender of power such that the independence of the enforcing official has been compromised or shared by the private person).

In the Seventh Circuit, strict pleading requirements have been added to the *Adickes* rule where the joint activity is between private individuals and a state court judge. See *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979). These strict pleading requirements are met only if the allegations of the complaint meet a minimum standard of particularity in detailing the alleged conspiracy between the private individuals and the state court judge. For example, in *Brucar v. Rubin*, the strict pleading requirements were met because the court of appeals could reasonably conclude from the Brucars' allegations that: (1) the private individuals used the state court proceedings to produce a constitutional wrong; (2) there was agreement between the private individuals and the state court judge beyond ordinary request and persuasion by the prevailing party; and (3) the state court judge invidiously used his office to deprive the Brucars of a federally protected right. *Brucar v. Rubin*, 638 F.2d at 993–994.

■ A review of the plaintiffs' allegations reveals the following. In ¶ 3 on page 2, "Grounds for Federal Jurisdiction," the plaintiffs allege that a judge did not attempt "to meet the due process requirements by causing a hearing to be held on said Temporary Restraining Order * * *." In addition to the paragraphs mentioning Judge Stephan as noted above, the plaintiffs allege in ¶ 45 that Judge Byers signed

the restraining order. And in ¶¶ 61–63, the plaintiffs allege that the Bank's attorney, Chester Stauffacher, was able to abuse or usurp judicial power to violate the plaintiffs' constitutional rights.

Applying the above authority regarding strict pleading requirements to the allegations is the case at bar, the Court is persuaded that the allegations do not meet the minimum standard of particularity in detailing the alleged conspiracy between the Bank, Chester Stauffacher, Judge Stephan, and Judge Byers. The complaint is impermissibly conclusory and vague concerning what acts, if any, may have been committed in the furtherance of the conspiracy; what acts, if any, show agreement between these defendants beyond ordinary request and persuasion by the prevailing party; and what acts, if any, show that the state court judges invidiously used their offices to deprive the plaintiffs of their constitutional rights.

In summary, the plaintiffs have failed to satisfy the under color of state law element to their § 1983 actions against the Bank for the setoff and the restraining order. Accordingly, these actions must be dismissed.[4]

### 3. The Claims Based on Alleged Violations of the Plaintiffs' Constitutional Rights

In addition to their claims based on 42 U.S.C. § 1983, the plaintiffs have raised several constitutional claims regarding the Bank's use of a setoff and the Bank's obtainment of an ex parte restraining order that prohibited the plaintiffs from disposing of their marine business inventory. The Bank and Bank Employees and Officials have moved to dismiss plaintiffs' constitutional claims based on the setoff and the restraining order on the ground that these claims are barred by the doctrine of res judicata.

As the factual background for consideration of the motion to dismiss, the record demonstrates the following:

The complaint brought by the Bank in its Door County Circuit Court action against Stagecoach Junction, Stagecoach Marine & Sporting Goods, and the Dannhausens alleged, inter alia, that the Dannhausens were delinquent in the payment of their obligations to the Bank. The Dannhausens defended this action, raising four affirmative defenses and seven counterclaims; the Dannhausens later added an eighth counterclaim to the Bank's action. In their first and second counterclaims to the Bank's state court action, the Dannhausens challenged the propriety and legality of the Bank's use of its right to set off their bank accounts against delinquent obligations; in their seventh and eighth counterclaims to the Bank's action, the Dannhausens challenged the legality of the manner in which the Bank obtained the ex parte temporary restraining order that prohibited them from disposing of their marine business inventory.

As noted above, the trial of the Bank's claim and the Dannhausens' claims lasted eleven days. After trial, Judge Martineau made, inter alia, the following findings: (1) that the Bank was entitled to judgment against the Dannhausens for their delinquent promissory notes; (2) that the Bank was entitled to the dismissal of the Dannhausens' counterclaims for improper setoff, because "the bank's set-off action on August 3, 1976, is proper and justified as a matter of law * * * "; and (3) that the Bank was entitled to the dismissal of the Dannhausens' counterclaims for an improper restraining order because "no act [relating to the restraining order] was improper." *First National Bank of Sturgeon Bay v. Stagecoach Junction*, No. 3948, at 4–5 (Cir. Ct.Wis. Feb. 5, 1979).

---

**4.** Since the plaintiffs have failed to establish the essential elements of their § 1983 actions against the Bank, the Court believes it is unnecessary and inappropriate for this Court to resolve the contention raised by the Bank that res judicata precludes a § 1983 claimant from litigating in federal court an issue that he might have raised but did not raise in previous litigation.

0.567

0.567

The related doctrines of res judicata and collateral estoppel are intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, encourage reliance on adjudication by preventing inconsistent decisions, and promote the comity between state and federal courts. *Allen v. McCurry*, 449 U.S. 90, 94–96, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980). This Court is required to give preclusive effect under the doctrines of res judicata and collateral estoppel to state court judgments whenever the courts of the state from which the judgment emerged would do so. *Huron Holding Corp. v. Lincoln Mine Operations*, 312 U.S. 183, 193, 61 S.Ct. 513, 517, 85 L.Ed. 725 (1941). The bar imposed by the doctrine of res judicata precludes parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, supra, 449 U.S. at 94, 101 S.Ct. at 414, citing *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); *Northwestern National Casualty Co. v. State Automobile & Casualty Underwriters*, 35 Wis.2d 237, 244, 151 N.W.2d 104 (1967). Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first action. *Allen v. McCurry*, supra, 449 U.S. at 94, 101 S.Ct. at 414, citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *McCourt v. Algiers*, 4 Wis.2d 607, 91 N.W.2d 194 (1958). But one general limitation on use of the doctrine of collateral estoppel is that this doctrine cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case. *Allen v. McCurry*, supra, 449 U.S. at 95, 101 S.Ct. at 415, citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329, 91 S.Ct. 1434, 1442–1443, 28 L.Ed.2d 788 (1971).

The rule that a judgment on the merits operates as a bar not only to issues litigated but also to issues that might have been litigated applies to the situation where a second action is attempted on the same facts but using a new theory.[5] Thus, if the facts in the two actions are the same but, in the second action, the party bringing the claim bases his claim on a different legal theory than he used as a counterclaiming defendant in the first action, then the actions are the same and res judicata bars the second action. See, e.g., *Flynn v. State Board of Chiropractic Examiners*, 418 F.2d 668 (9th Cir. 1969); *Auritt v. Wheatcroft*, 370 F.Supp. 948 (E.D.Pa.1974).

Applying the above authority to the facts in this case, the Court is persuaded that the plaintiffs are attempting to relitigate claims using a different legal theory (constitutional violations) than they used as counterclaiming defendants in the state court action against the Bank. Unquestionably, the plaintiffs were parties to the state court litigation. They raised claims against the Bank for the Bank's use of the setoff and the Bank's obtainment of the restraining order that prevented them from disposing of their marine business inventory. After a full and fair opportunity to litigate their counterclaims against the Bank, a valid and final judgment was entered in the state court action, providing that the Bank was entitled to judgment against the plaintiffs and that the Bank was entitled to dismissal with prejudice of the plaintiffs' claims for the setoff and the restraining order. Unquestionably, the state court finding that the Bank's actions were proper is essential to the judgment entered in the state court action. Because the Court is convinced that the plaintiffs' claims against the Bank and Bank Directors and Employees for the illegality and the impropriety of the setoff and restraining order were raised, fully litigated, and dismissed on their merits in the Wisconsin courts, the Bank and Bank Employees and Officials'

---

**5.** This is no indication of the Court's position on the difficult question of whether a § 1983 claimant can litigate in federal court an issue he might have raised in previous litigation due to the exceptional nature of the § 1983 remedy.

motion to dismiss plaintiffs' constitutional claims based on the setoff and restraining order under the doctrines of res judicata and collateral estoppel will be granted.

### D. *Motions to Dismiss Brought by Chester Stauffacher*

As noted in the introductory section to this decision, the plaintiffs have raised several claims against Chester Stauffacher.

#### 1. *The Claims Based on 42 U.S.C. § 1983*

■ For the reasons set forth in the Court's discussion of the plaintiffs' claims against the Bank and Bank Officers and Employees under § 1983, the plaintiffs have failed to satisfy the under color of state law element to their § 1983 action against Chester Stauffacher for the restraining order. Accordingly, this action must be dismissed.[6]

#### 2. *The Claim Based on Alleged Violations of the Plaintiffs' Constitutional Rights*

■ In addition to their claim based on 42 U.S.C. § 1983, the plaintiffs have raised constitutional claims against Stauffacher regarding the Bank's setoff and obtainment of an ex parte restraining order that prohibited the plaintiffs from disposing of their marine business inventory. Stauffacher has moved to dismiss these claims on the ground that they are barred by the doctrine of res judicata.

The factual background for consideration of Stauffacher's motion to dismiss was set forth earlier in the Court's discussion of the plaintiffs' claims against the Bank and Bank Officers and Employees based on alleged violations of the plaintiffs' constitutional rights.

The doctrines of res judicata and collateral estoppel were detailed above. In addition to that discussion a judgment may have preclusive effects not only between the parties to the original proceeding but also between a party to the original proceeding and one who was not a party to the first proceeding.

The modern rule of defensive collateral estoppel derives from *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942). Prior to their bringing of the *Bernhard* action, the heirs of an elderly woman brought suit against the man who had acted as her financial adviser and executor, claiming that he had transferred her money into his personal bank account. *Id.* at 893. The heirs lost this suit, based on a finding that the money had been given to her financial adviser as a gift. *Id.* The heirs then sued the bank that had made the transfer, claiming that the transfer was improper and that the bank should have taken care to prevent it. *Id.* The Bank argued that the prior judgment against the heirs was conclusive against the heirs on the question of the legitimacy of the transfer. *Id.* at 893–894. In determining the validity of the Bank's assertion of res judicata, the Court raised three critical questions: (1) was the issue decided in the prior adjudication identical with the one presented in the action in question; (2) was there a final judgment on the merits; and (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication. *Id.* at 895. After answering each of the three critical questions, the Court agreed with the Bank's assertion of res judicata and held that the heirs were precluded from litigating the legitimacy of the transfer. *Id.*

The rule layed down for determining the validity of a plea of res judicata in *Bernhard* is now the accepted rule on issue preclusion. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Therefore, in determining the validity to Stauffacher's plea of res judicata to the Dannhausens' claim that he violated

---

**6.** Since the plaintiffs have failed to establish the essential elements of their § 1983 actions against Stauffacher, the Court believes it is unnecessary and inappropriate for this Court to resolve the contention raised by him that res judicata precludes a § 1983 claimant from litigating in federal court an issue that he might have raised but did not raise in previous litigation.

the Dannhausens' constitutional rights by his actions in connection with the ex parte temporary restraining order, the Court must answer the three critical questions noted above.

Applying the *Bernhard* rule to the facts in the case at bar, the Court is persuaded that the state court judgment precludes the bringing of these constitutional claims against Stauffacher. Upon review, the Court is convinced that the identical issues of whether the setoff was proper and whether malicious legal proceedings were commenced against the plaintiffs were raised, fully litigated, and dismissed on their merits in the Wisconsin courts. Judge Martineau's findings of fact on these issues are a final adjudication of these issues on the merits. Accordingly, Stauffacher's motion to dismiss this action on the doctrines of res judicata and collateral estoppel will be granted.

III. *THE PENDENT STATE CLAIMS FOR BREACH OF CONTRACT, MISREPRESENTATION, WRONGFUL SETOFF, AND ABUSE OF LEGAL PROCESS*

█ Where a case raises a federal claim with sufficient substance to confer subject matter jurisdiction on the court, a state law claim arising out of a common nucleus of operative facts may also be heard in the federal court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If, however, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. Without deciding whether the Dannhausens have any pendent state law claims which they are not precluded from raising in this federal action under the doctrines of res judicata and collateral estoppel, since this Court has dismissed all the Dannhausens' federal claims before trial, it follows that their state claims should be dismissed as well.

ORDER

For the foregoing reasons,

IT IS ORDERED that the motions of the defendants The First National Bank of Sturgeon Bay, Calvin Falk, Robert Tilden, Fred Peterson, Anthony L. Schlise, Marion A. Staats, Robert L. Wolter, Lawrence E. Wulf, Dr. H. D. Grota, and Gregory Stephan to dismiss this action with prejudice as to them are granted.

IT IS FURTHER ORDERED that the motion of Judge Edwin C. Stephan to dismiss this action with prejudice as to him is granted, and that this action against Judge J. W. Byers, deceased, is dismissed as to him for failure of service.

IT IS FURTHER ORDERED that the motion of Chester Stauffacher to dismiss this action with prejudice as to him is granted.

IT IS FURTHER ORDERED that the motion of the Comptroller of the Currency, Kenneth W. Leaf, Harold J. Hansen, and Robert Bloom to dismiss this action with prejudice as to them is granted.

IT IS FURTHER ORDERED that this action in its entirety is dismissed with prejudice.