**Thomas DURSO, Plaintiff-Appellant,**

v.

**Charles ROWE et al.,
Defendants-Appellees.**

No. 77–2123.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1978.

Decided July 19, 1978.

Rehearing and Rehearing In Banc
Denied Aug. 24, 1978.

lease status constitutes a deprivation of liberty protected by the Due Process Clause of the Fourteenth Amendment. The district court, in dismissing the complaint for failure to state a claim upon which relief can be granted, concluded that a state prisoner assigned to a work-release program does not have a constitutionally protected liberty interest in that status and therefore no notice or hearing was required before such status was revoked. For the reasons hereinafter developed, we hold that such a conclusion cannot be made as a matter of law and that the case must be remanded for an evidentiary hearing.

I

Plaintiff-appellant Thomas Durso was incarcerated at the Stateville Correctional Center in Joliet, Illinois following his conviction in 1964. Ten years later the Illinois Department of Corrections approved plaintiff's application for work-release status, and on August 15, 1974 he was transferred to the Joliet Work Release Center. As a participant in that program, plaintiff was authorized to attend classes outside the Center and to use recreational and other public facilities in the community.

Approximately one week after he arrived at the Center, plaintiff was granted a two-day home furlough. While on furlough it is alleged that the *Chicago Tribune* published an article which was highly critical of plaintiff and his participation in the work-release program. The Cook County State's Attorney also issued a public statement, quoted in the *Tribune* article, criticizing the transfer. Shortly thereafter prison officials informed plaintiff that he might have to be removed from the program because of the strong adverse community reaction to his placement. It is also alleged that his participation in the program was restricted following this incident.

On October 5, 1974 plaintiff had a visitor at the Center. Although he alleges that he was given permission to have a visitor,

Barry Sullivan, Chicago, Ill., for plaintiff-appellant.

Joseph Moscov, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

SWYGERT, Circuit Judge.

The principal issue raised in this appeal is whether revocation of a prisoner's work-re-

plaintiff was orally charged with violating the rules regarding visitation rights. Plaintiff was returned to the maximum security section at Stateville that evening.

Approximately two weeks later plaintiff received a formal written complaint charging him with a violation of the Center's rules. Plaintiff, by letter, denied that he had violated any of the posted regulations. On November 2, 1974 plaintiff was informed that he was exonerated of all charges against him. According to the allegations he was also told at this time that he would be transferred to the work-release program at Carbondale.

In January 1975 plaintiff was orally advised that his transfer to Carbondale had been cancelled and that his work-release status had been revoked. Thereafter he initiated a grievance proceeding with the Department's Administrative Review Board. Although plaintiff was allowed to appear before the Board, he alleges that he was given no opportunity to present any evidence to show why his participation in the program should not have been terminated. The Board advised plaintiff that it was not in his best interest or the best interest of the work-release program for him to participate at that time. Plaintiff was not given any reasons for these conclusions.

On October 8, 1976 plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 seeking monetary, declaratory, and injunctive relief against certain officials of the Illinois Department of Corrections. In the complaint plaintiff alleged that the termination of his work-release status deprived him of procedural due process (Count I), of certain state statutory rights (Count II), and of the equal protection of the laws (Count III).

Upon motion of the defendants, the district court dismissed the complaint for failure to state a claim and for lack of subject matter jurisdiction. *Durso v. Rowe,* 430 F.Supp. 49 (N.D.Ill.1977). The court rejected the due process claim in Count I on the ground that revocation of work-release status is not a deprivation of any liberty interest embraced within the Due Process Clause. Count III was dismissed because the court deemed the allegations as too conclusory and because it deemed the mere inconsistency in the operation of prison management as insufficient to state a claim under the Equal Protection Clause. Having dismissed the two federal claims, the court then dismissed the pendent state claim in Count II.

II

In dismissing plaintiff's due process claim the district court concluded that *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed. 451 (1976) was controlling and required a finding that revocation of plaintiff's work-release status did not infringe upon a constitutionally protected liberty interest. The Supreme Court in *Meachum* held that the transfer of state inmates to a prison where the living conditions were "substantially more burdensome" than at the previous prison did not *ipso facto* constitute a deprivation of liberty requiring due process. The Court rejected the notion that "*any* grievous loss" or "*any* change in the conditions of confinement having a substantial adverse impact on the prisoner" is sufficient to activate the procedural safeguards of the Fourteenth Amendment. 427 U.S. at 224, 96 S.Ct. [2532] at 2538 (emphasis in original). The Court reiterated that the pivotal factor in determining whether an asserted interest is constitutionally protected is "the nature of the interest involved rather than its weight."

The Court distinguished the protection of liberty that the Due Process Clause protects "by its own force" and the protection of liberty following a criminal conviction. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system . . . .. The conviction has sufficiently extinguished the

defendant's liberty interest to empower the State to confine him in *any* of its prisons." 427 U.S. at 224, 96 S.Ct. at 2538 (emphasis in original).

Because the prisoners in *Meachum* had been lawfully convicted, the Court resorted to "state law or practice" to determine whether the nature of the interest was embraced within the Due Process Clause. Specifically, the Court sought to ascertain whether the interprison transfers were conditioned "on proof of serious misconduct or the occurrence of other events." 427 U.S. at 216, 96 S.Ct. at 2534. The Court noted that the governing statute involved there left the decision to transfer to the discretion of prison officials; exercise of the discretion was not restricted in any way. That charges of serious misconduct often initiate and heavily influence the decision to transfer was deemed insufficient to base an expectation that good behavior would insulate a prisoner from transfer. Because the prisoner had no "right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events," *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), the Court held that the interprison transfer did not implicate any constitutionally protected liberty interest.

Central to the holding in *Meachum* was the absence of any state-created right grounded in law or practice.[1] A right "grounded in law," missing in *Meachum*, was present in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In that case a state statute not only provided a right to good time but also specified that it could be forfeited only for serious misconduct. Because the statute restricted the discretion of prison authorities, the Court held that the prisoner's interest was within the concept of liberty protected by the Due Process Clause.

■ The predicate necessary to trigger the Due Process Clause is not restricted to statutorily-created rights; it may also be found in official policies or practices. For example, in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the governing statute gave prison officials unfettered discretion to revoke one's parole at any time or for any reason. Nonetheless the Court held that the termination of parole must be accompanied with procedural safeguards because a parolee relies on "an implicit promise that [his] parole will be revoked only if he fails to live up to the parole conditions."[2] 408 U.S. at 482, 92 S.Ct. at 2601.

■ Whether plaintiff's due process claim is cognizable therefore depends upon whether he has a right or justifiable expectation based on state law or practice which conditions the revocation of his work-release status upon proof of serious misconduct or the occurrence of other specified events. If he does have such a right or expectation, the minimum procedures required by the Due Process Clause are necessary "to insure that the state-created right is not arbitrarily abrogated." *Wolff, supra,* 418 U.S. at 557, 94 S.Ct. at 2975.

---

1. Also central to the holding was that the summary transfer to another state institution was not followed by any disciplinary punishment, loss of good time or segregated confinement. 427 U.S. at 221–22, 96 S.Ct. 2532. *See also Montanye v. Haymes*, 427 U.S. 236, 238, 96 S.Ct. 2543 (1976). Where transfers are accompanied by such disciplinary action, due process applies. *See, e. g., Aikens v. Lash*, 547 F.2d 372 (7th Cir. 1976).

2. The Supreme Court has recognized in other areas as well that constitutionally protected interests arise not only from statutorily-created

rights but also from policy or custom. For example, in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court, in reversing the district court's award of summary judgment for the defendant, held that the nontenured teacher must be given the opportunity to prove "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.'" *Id.* at 602–03, 92 S.Ct. at 2700.

Plaintiff first argues that his expectation that his work-release status would not be revoked unless he violated a rule or condition of the program is predicated on the Illinois Unified Code of Corrections, Ill.Rev. Stat. ch. 38, §§ 1001–1–1 *et seq.* Section 3–8–7(e) of the Code provides that certain procedures must be followed "[i]n disciplinary cases which may involve . . . a change in work, education, or other program assignment of more than 7 days duration . . . ." [3] Plaintiff correctly argues that revocation of one's work-release status and removal from a work-release center involves "a change in work . . . or other program assignment of more than 7 days duration." He further reads the statute as saying that this change in assignment may be imposed only as punishment for serious misconduct. With this we cannot agree.

Plaintiff's interpretation is belied by the language of the statute itself. Subpart 6 to section 3–8–7(e) provides: "A change in work, education, or other program assignment shall not be used *for disciplinary pur-*

*poses* without prior review and approval [by a grievance review board]." (Emphasis added.) The italicized portion of this provision would have been unnecessary if disciplinary purposes were the exclusive way in which one's program assignment could be changed.

More important, however, to construe this provision as prohibiting any program assignment change unless based upon a disciplinary violation is to curtail severely the ability of prison officials to exercise discretion in modifying program assignments of any significant duration. We do not believe this was the intent of the Illinois General Assembly in enacting this provision. A fair reading of the statute indicates it applies only when ·the change in program assignment is for disciplinary purposes; it does not prohibit a change in assignment for nondisciplinary reasons and does not limit the discretion of prison officials in making transfer decisions. Therefore plaintiff cannot base his right or expectation on state law.[4]

3. The section continues: "[T]he Director shall establish disciplinary procedures consistent with the following principles:

(1) Any person or persons who initiate a disciplinary charge against a person shall not determine the disposition of the charge. The Director may establish one or more disciplinary boards to hear and determine charges. To the extent possible, a person representing the counseling staff of the institution or facility shall participate in determining the disposition of the disciplinary case.

(2) Any committed person charged with a violation of Department rules of behavior shall be given notice of the charge including a statement of the misconduct alleged and of the rules this conduct is alleged to violate.

(3) Any person charged with a violation of rules is entitled to a hearing on that charge at which time he shall have an opportunity to appear before and address the person or persons deciding the charge.

(4) The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The per-

son charged may be permitted to question any person so summoned.

(5) If the charge is sustained, the person charged is entitled to a written statement of the decision by the persons determining the disposition of the charge which shall include the basis for the decision and the disciplinary action, if any, to be imposed.

(6) A change in work, education, or other program assignment shall not be used for disciplinary purposes without prior review and approval under Section 3–8–3.

4. Shortly after plaintiff's work-release status was revoked, the Illinois Department of Corrections pursuant to a statutory directive promulgated Administrative Regulation 1201. This regulation, which became effective July 1, 1975, sets up a detailed procedure for notice and a hearing prior to any decision to revoke one's work-release status. (Indeed, the procedures contained in this regulation include all of the procedures requested by plaintiff in this case.) The district court correctly held that the regulation does not control this case as the regulation did not become effective until after plaintiff's claim arose. *See* 430 F.Supp. at 51 n. 5. Nonetheless, the dismissal of the com-

■ Plaintiff also argues that he is entitled to the protections of the Due Process Clause because his right is grounded in state practice. In his complaint plaintiff alleges that prison authorities customarily do not interfere with one's work-release status unless the participant violates some rule of the program or of his work-release contract. As this is an appeal from a motion to dismiss, this allegation must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Accordingly plaintiff must be given an opportunity to prove that as a matter of practice, prison officials did not revoke one's work-release status absent a rule violation. If the allegation is established,[5] the plaintiff has been denied his right to due process of law. *See Tracy v. Salamack*, 572 F.2d 393 (2d Cir. 1978).

We are compelled to note the strong similarities between parole and work-release. Indeed, many of the "core values of unqualified liberty" which the Supreme Court recognized that parolees enjoy, *see Morrissey, supra*, 408 U.S. at 482, 92 S.Ct. 2593, are also present here. Like a parolee, a convict on work-release can pursue employment or education. He is eligible for leaves to renew contacts with his family. He may also be released to participate in unsupervised activities in the community, such as shopping, recreation, and visiting friends. A work-release participant's freedom is more limited than a parolee's. That difference, however, is one of degree only. The extent and nature of his freedom is qualitatively different from any "freedom" allowed at the prison. Moreover, revocation of that status entails a loss far more grievous than that sustained by one who is transferred from one prison to another.

## III

In Count III plaintiff alleged that he was denied the right to the equal protection of the laws because defendants revoked his work-release status without affording him the same kind of hearing allegedly given to other participants of the program. In dismissing this count for failure to state a claim, the court held that the claim was conclusory and lacked a statement of sufficiently particularized facts. It further held that absent the presence of a suspect class, the mere inconsistency in the operation of prison management is not violative of the Equal Protection Clause. ·430 F.Supp. at 52--53.

■ Under the Federal Rules of Civil Procedure, a plaintiff in a section 1983 action is only "required to set forth specific illegal misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance." *Duncan v. Nelson*, 466 F.2d 939, 943 (7th Cir.), *cert. denied*, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972). Count III of the complaint meets this standard. Plaintiff alleges that he was denied the same procedural safeguards given all other participants in the program before their work-release status was revoked. The only way plaintiff could have given more particularized facts would have been to identify those participants who were afforded a hearing. That is the job for discovery.[6]

■ The district court also held that plaintiff's complaint failed to state a claim

---

plaint deprived plaintiff from establishing that Regulation 1201 merely codified the Department's customary prior practice.

**5.** An Illinois Department of Correction Study of the first three years of its work-release program appears to support plaintiff's allegation that, absent a rule violation, a work-release participant is entitled to remain at the center. Of the thirty participants who were returned to prison from the program (the balance being released on parole or their sentences having expired), two committed new crimes, one was returned for an "uncooperative attitude," and twenty-seven were returned for rule violations, *e. g.*, unauthorized absence from the center or a job. K. Houlihan, *Adult Work Release Program* (Illinois Department of Corrections Publication, 1972).

**6.** If the complaint was vague or lacked detail, defendants should have filed a motion for a more definite statement under Rule 12(e), not a *motion to dismiss. See* 2A J Moore, Federal Practice ' 12.08 (2d ed. 1974).

because "the mere inconsistency in the operation of prison management, absent [the] application of suspect classifications, is not violative of the equal protection clause." 430 F.Supp. at 53. We believe the district court's view of a prisoner's right to bring an equal protection claim is too narrow. A state prisoner need not allege the presence of a suspect classification or the infringement of a fundamental right in order to state a claim under the Equal Protection Clause. The lack of a fundamental constitutional right or the absence of a suspect class merely affects the court's standard of review; it does not destroy the cause of action. "[I]n the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir. 1976). And as we noted there, "prisoner claims do not form an exception to the general rule" that equal protection claims need not be based on the denial of a fundamental right or the involvement of a suspect class. 547 F.2d at 998. *See Nadeau v. Helgemoe*, 561 F.2d 411, 416 (1st Cir. 1977).

█ We agree that prison officials must be accorded latitude in the administration of prison affairs. *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). We also agree that a mere inconsistency in prison management may not in itself constitute a cognizable equal protection claim. *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). But plaintiff's allegations go further than merely to assert that he was the victim of an erroneous decision; he claims that defendants purposefully denied him a hearing before terminating his work-release status even though hearings were customarily afforded to other inmates similarly situated.

The defendants may be able to establish the rationality of treating plaintiff differently. But a court ought not dismiss an equal protection claim on the basis of reasons unrevealed to the court. *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The state must come forward and identify the legitimate state interest being furthered. *Gault v. Garrison*, 569 F.2d 993, 996 (7th Cir. 1977). As we again noted in *French*:

In the absence of an articulated purpose for the distinctions drawn here, we cannot indulge in supplying an imaginary purpose or basis for the classification . . . and thereby preclude plaintiffs from showing that such an "apparent" basis does not actually exist. . . . In this appeal the question is not whether plaintiffs will ultimately succeed in proving their claim that the classification by defendants lacks a rational basis, but rather whether or not plaintiffs are entitled to present evidence in support of their claim.

547 F.2d at 999 (citations omitted).

IV

█ Because we hold that the district court erred in dismissing Counts I and III, it necessarily follows that the dismissal of Count II—the allegation that defendants violated Illinois law—must also be reversed. As the state and federal claims "derive from a common nucleus of operative fact," the district court has power to hear the pendent claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

█ We make one final ruling. In *Hagans v. Lavine*, 415 U.S. 528, 546-47, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Supreme Court reiterated the rule that it is generally advisable to decide a pendent state claim before addressing a federal constitutional claim. The district court is therefore instructed to determine the rea-

son for plaintiff's removal from the work-release program, *i. e.*, whether it was for disciplinary or nondisciplinary reasons. If the court finds that the purpose was disciplinary, then Ill.Rev.Stat. ch. 38, § 1003–8–7(e) and regulations promulgated thereunder require that defendants afford plaintiff a hearing. Such a finding would dispose of the case and render unnecessary a decision of the federal constitutional claims. If, however, the court finds that plaintiff was removed for nondisciplinary reasons, plaintiff is still entitled to establish that he had a right or justifiable expectation under state practice that his work-release status would not be revoked unless conditioned upon the occurrence of specified events.

The order dismissing the complaint is reversed and this cause is remanded for further proceedings consistent with this opinion.