983 F.2d 1072
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert L. DAVIS, Shukree A. Nadir, and Neal Ruetz,
Plaintiffs-Appellants,
v.
James E. AIKENS, John L. Nunn, and Norman G. Owens,
Defendants-Appellees.
 Nos. 91-2013, 91-2017 and 91-2057.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 14, 1992.*
Decided Dec. 17, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 In these consolidated appeals, plaintiffs Robert Davis, Shukree Nadir, and Neal Ruetz challenge the district court's entry of summary judgment in favor of the defendants, officials of the Indiana Department of Corrections ("DOC"). We consolidated the appeals because they involve common facts and legal issues. The plaintiffs were inmates at Lakeside Correctional Unit ("LCU"),[1] until there was a change in the classification system. Effective February 1, 1990, DOC changed the eligibility criteria for housing at LCU. N.Doc. 27 (exhibits). As a result, the plaintiffs were no longer eligible for housing at LCU, and so on March 12, 1990, the plaintiffs were transferred to a maximum security facility. This resulted in less favorable conditions of confinement.
 
 
 2
 The plaintiffs each filed a complaint alleging violation of 42 U.S.C. § 1983. Nadir and Ruetz also claimed the defendants violated 42 U.S.C. § 1985(3) and § 1986. The district court issued an order on February 13, 1991, allowing the defendants until May 1 to file dispositive motions. The same order also provided that "[t]he plaintiffs are thereafter given until July 1, 1991, to respond to any motions to dismiss and/or for summary judgment fully and in writing."[2] The defendants filed their original motion for summary judgment on February 21, 1991. D.Rec. 24. They filed an amended motion for summary judgment on March 4, 1991. D.Rec. 26. Davis filed a response to this motion on March 11. D.Rec. 29 Nadir filed his response on March 18. N.Rec. 31. On April 15, the district court granted the defendants' motion for summary judgment. D.Rec. 31. As of April 15, Ruetz had not filed a response.
 
 I.
 
 3
 On appeal, all three plaintiffs claim that the district court ruled on the defendants' motion for summary judgment prematurely. They base this contention on the fact that the court's February 13 order gave them until July 1 to respond, but that the court ruled on the motion on April 15. We address each of the plaintiff's contentions in turn.
 
 
 4
 a. Davis
 
 
 5
 Davis filed his response before the district court ruled on the defendants' motion. He claims, however, that his March 11 response did not contain an affidavit, which he had planned to submit, due to his limited access to legal facilities. He did not notify the district court that he planned to submit any materials in the future. On the contrary, in his "Motion to Respond to Summary Judgement," Davis stated that "[a] memorandum in support and affidavits are being filed with this motion." D.Rec. 29. This suggested that everything that was going to be filed was being filed with the response. Moreover, Davis does not indicate what the affidavit would have contained or how it would have created a genuine issue of material fact. Indeed, it is hard to imagine how the affidavit could have changed the district court's decision, which was based on the legal conclusion that Davis had no protected liberty interest, arising from either the United States Constitution or the constitution or statutes of Indiana, in any housing assignment within the DOC. The district court did not err in granting summary judgment against Davis.
 
 
 6
 b. Nadir
 
 
 7
 Nadir also filed his response to the defendants' motion for summary judgment before the district court made its ruling. He claims, however, that he was "not able to gather the necessary information and properly respond" because he was being transferred within the DOC prison system at the time. N.Br. 8. Like Davis, Nadir failed to inform the district court that he intended to supplement his response. He also fails to identify what additional facts or legal arguments he would have added to his response if the district court had waited until July 1. Nor is Nadir's alleged inability to respond to the amended motion for summary judgment grounds for reversal. The amended motion dealt with a new complaint filed by another inmate making the same "liberty interest" argument raised by the other plaintiffs. The amended motion simply applied arguments previously made in the defendants' initial motion to the new plaintiff. N.Rec. 27 at 8. Thus, there was no new issue to which Nadir (or the other two plaintiffs in this appeal) needed to respond.
 
 
 8
 c. Ruetz
 
 
 9
 As of April 15, Ruetz had not responded to the defendants' summary judgment motion. Nevertheless, the district court granted the motion. Given our decision in Indiana Port Comm'n v. Bethlehem Steel Corp., 702 F.2d 107 (7th Cir.1983), the district court erred. In that case, as in this case, the district court had established a schedule for filing summary judgment motions and replies thereto. Both parties moved for summary judgment, though the defendant limited its motion to one issue. Prior to the court's own deadline for filing a response, the district court granted the plaintiff's motion before the defendant responded. We reversed on appeal because the defendant had not been given an opportunity to respond to the other arguments raised in the plaintiff's summary judgment motion. Id. at 111.
 
 
 10
 The government argues that Ruetz was not harmed by the court's premature decision, noting that
 
 
 11
 while Ruetz did not respond to the motion for summary judgment he has presented his arguments to this Court. Ruetz's arguments are virtually identical to those presented by Davis and Nadir. The District Court considered and rejected the arguments presented by Nadir and Davis in their responses; it would have made no difference in the outcome of the case had Ruetz presented the same arguments to the District Court as he has presented to this Court. None of these arguments have any merit and to remand his case to the District Court would be a waste of time and judicial resources.
 
 
 12
 Gov't Br. 10. In Indiana Port Comm'n, we rejected a similar type of harmless error analysis. Id. at n. 2. Yet even if we accepted such an argument in general, we cannot accept it in this case. The government's argument rests on an assumption as to what Ruetz would have presented to the district court. Perhaps the government is right, but its position is based on pure speculation. Ruetz could have advanced some argument different from that raised by the other plaintiffs as to why he has a liberty interest in his security classification. For example, he may have been able to point to some statute or regulation of Indiana that none of the others discussed. We will not pore over the entire statutory and regulatory framework of Indiana in order to eliminate the possibility that Ruetz might have a state-created liberty interest in his security classification. The responsibility rests on Ruetz to make his case before the district court, not on this court to disprove his case on appeal. In order to carry out his responsibility, however, Ruetz must be given an opportunity to respond to the defendants' summary judgment motion. Therefore, we vacate the district court's grant of summary judgment with respect to Ruetz, and we remand with directions that Ruetz be given a reasonable opportunity to respond to the defendants' motion for summary judgment.
 
 II.
 
 13
 We review the district court's entry of summary judgment de novo. "Where the parties agree as to the material facts, as they do here, we must determine if the moving party is entitled to judgment as a matter of law." Carter v. Buscher, 973 F.2d 1328, 1331 (7th Cir.1992).
 
 A.
 
 14
 Davis and Nadir argue that they have a constitutionally-protected liberty interest in their minimum security classification. They acknowledge that under Meachum v. Fano, 427 U.S. 215 (1976), and Montanye v. Haymes, 427 U.S. 236 (1976), they have no such interest arising from the Fourteenth Amendment's due process clause itself.[3] Rather, they argue that Indiana Code 11-10-1-6 creates such an interest.
 
 
 15
 A state statute or regulation can create a constitutionally-protected liberty interest when it "use[s] language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed, and that [a change in security classification] will not occur absent specified substantive criteria." Hewitt v. Helms, 459 U.S. 460, 471-72 (1983) (citations omitted). As we have noted, however, "the state's use of mere procedural guidelines, without more, is not sufficient to create a protectible liberty interest." Pardo v. Hosier, 946 F.2d 1278, 1281 (7th Cir.1991).
 
 Indiana Code 11-10-1-6 provides:
 
 16
 The department shall, at least annually, review, in accord with sections 2 and 3 of this chapter, every committed offender not on parole to determine the appropriateness of his current classification and assignment and to make a classification-assignment decision based upon that review. Before making a classification-assignment decision the department shall interview the offender, discuss with him the information on which the decision will be based, and allow him to challenge that information and present pertinent information of his own. The department shall notify the offender, in writing, of his classification-assignment decision and the reasons for it.
 
 
 17
 Thus, while I.C. 11-10-1-6 mandates some of the procedures by which officials should make the classification-assignment decision, it does not mandate any particular outcome.[4] In other words, it does not establish that a change in an offender's classification-assignment "will not occur absent specified substantive criteria." Hewitt, 459 U.S. at 471-72. Hence, I.C. 11-10-1-6 does not confer upon Davis or Nadir a liberty interest in their classification-assignments. Accord Daniels v. Aikens, 755 F.Supp. 239, 242-43 (N.D.Ind.1991).
 
 
 18
 Davis and Nadir also claim that they had a liberty interest in their security classifications because "prison officials customarily do not interfere with one's minimum security assignment status unless the inmate violates some rule of the program or his trustee assignment contract." D.Br. 15; see N.Br. 26. Although our decision in Durso v. Rowe, 579 F.2d 1365 (7th Cir.1978), cert. denied, 439 U.S. 1121 (1979), would seem to support this, we must reject this argument. As the Supreme Court has said (after our decision in Durso ), "[a] constitutional entitlement cannot 'be created--as if by estoppel--merely because a wholly and expressly discretionary state privilege has been granted generously in the past.' " Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 465 (1981) (quoting Leis v. Flynt, 439 U.S. 438, 444 (1979)). Vitek v. Jones, 445 U.S. 480, 489 (1980), does not hold to the contrary because in that case the prisoner's objective expectation was rooted in both official practice and state law. Indeed, after Vitek and Dumschat, we rejected the position that expectations based on mere practices are sufficient to create a liberty interest. Miller v. Henman, 804 F.2d 421, 425 (7th Cir.1986), cert. denied, 484 U.S. 844 (1987). Thus, the prison officials' mere custom of not changing that classification except for certain reasons did not bestow upon the plaintiffs a liberty interest in their classifications.
 
 
 19
 The plaintiffs claim to have had exemplary records while in LCU. If so, they are to be commended. However, neither this nor anything else they have mentioned conferred upon them any liberty interest in their security classifications. Since there were no genuine issues of material fact and the defendants were entitled to judgment as a matter of law, the district court's grant of summary judgment on this issue was proper.
 
 B.
 
 20
 Nadir also argues that the defendants violated 42 U.S.C. § 1985(3) by conspiring to deprive him of his constitutional rights under the Eighth and Thirteenth Amendments, and his right to equal protection of the laws. He also claims that they are liable under 42 U.S.C. § 1986 for failing to take action to prevent such deprivations.
 
 1. Eighth Amendment
 
 21
 Nadir claims that the defendants subjected him to cruel and unusual punishment by reassigning him to a higher security facility without his having violated any law, rule, or regulation, and without any sort of hearing. As we have already indicated, Nadir has failed to demonstrate a liberty interest in his security classification. Therefore, the fact that he was afforded no hearing before his reclassification is irrelevant. Any suggestion that merely being placed in a maximum security facility constitutes cruel and unusual punishment is spurious, and we reject it. We find no violation of Nadir's rights under the Eighth Amendment.
 
 2. Thirteenth Amendment
 
 22
 Nadir twice briefly alleges that the defendants violated his Thirteenth Amendment rights. He provides no serious argument in support of this claim. We find that it is waived. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.1991).
 
 3. Equal Protection of the Laws
 
 23
 Finally, Nadir argues that the defendants conspired to deprive him of the equal protection of the laws. As stated by the Supreme Court in Griffin v. Breckenridge, 403 U.S. 88 (1971), "[t]he language [in § 1985(3) ] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id. at 102.
 
 
 24
 Nadir does not allege any racial discrimination; rather, he maintains that the defendants conspired to deprive him of the equal protection of the laws by discriminating against him on the basis of his being of a specific class of individuals, namely, those who committed crimes against a person. N.Br. 31. He provides no support for his position that such a class is recognized by the courts. In United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825 (1983), the Supreme Court refused to construe § 1985(3) to reach conspiracies having a non-racial motivation, such as economic or commercial animus. Id. at 838. Although we have recognized that § 1985(3) extends to "conspiracies to discriminate based on sex, religion, ethnicity or political loyalty," Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir.1988), we are not persuaded to extend it to cover the strange-sounding class comprised of "prisoners who have committed crimes against persons." Unable to allege a legitimate class-based animus, Nadir's § 1985(3) claim must fail. Scott, 463 U.S. at 829.
 
 III.
 
 25
 For the foregoing reasons, the judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this order.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 At the time of the events leading up to this appeal, this facility was called "K Dormitory." There is some question about the correct security classification of LCU. The district court described LCU as a "minimum security housing unit on the grounds of the Indiana State Prison in Michigan City, Indiana, but outside of the walls of that institution." D.Rec. 31 at 10. However, it appears that as of May 22, 1989, LCU became a medium security facility. Executive Directive 89-20 (reprinted as Exhibit 6 in the appendix to Ruetz's brief). In any case, the precise classification does not affect our analysis
 
 
 [2]
 This order was apparently omitted from the records of these appeals, but the parties do not dispute the substance of the order
 
 
 [3]
 This concession is inconsistent with plaintiffs' attempt to analogize their situation to the work-release situation in Durso v. Rowe, 579 F.2d 1365 (7th Cir.1978), cert. denied, 439 U.S. 1121 (1979). In that case, this court held that a prisoner's allegation that prison authorities had a custom or practice of not revoking a prisoner's work-release status absent some misconduct stated a claim under the due process clause. Id. at 1371. We find the situation in Meachum to be a closer analogy. That case involved the transfer of a prisoner from a medium security facility to a maximum security facility at which the living conditions were "substantially less favorable." Nevertheless, the Supreme Court found that the due process clause, in and of itself, did not protect the prisoner against this transfer. Meachum, 427 U.S. at 224-25
 
 
 [4]
 I.C. 11-10-1-6 cross references I.C. 11-10-1-2 and -3. I.C. 11-10-1-2 does not directly concern the classification of an inmate. It provides that an offender shall be evaluated regarding such things as his medical condition and his criminal history. I.C. 11-10-1-3 lists the various factors in determining the appropriate security classification. However, while I.C. 11-10-1-3 requires the consideration of certain factors, it does not mandate any particular outcome when those factors are considered