**Brian D. CLAPPER, Thomas Biskup, Danny Heller, Kenneth Blaine, and Alvin Leifker, Plaintiffs,**

v.

**WISCONSIN DEPARTMENT OF CORRECTIONS, Michael Sullivan, William Grosshans, John Husz, and Ronald Keenan, Defendants.**

No. 95–C–0153.

United States District Court, E.D. Wisconsin.

Sept. 27, 1996.

Brian Clapper, Pro Se.

Kenneth Blaine, Pro Se.

Mark J. Rogers, Angermeier & Rogers, Milwaukee, Wisconsin, for Thomas Biskup, Danny Heller, and Alvin Leifker.

David E. Hoel, Assistant Attorney General, Wisconsin Department of Justice, Madison, Wisconsin, for Defendants.

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS

GORENCE, United States Magistrate Judge.

The plaintiffs, who are prisoners incarcerated at Oshkosh Correctional Institution (OCI), allege that their rights are being violated because they have not been considered for and placed in the Division of Intensive Sanctions (DIS) program. The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules Of Civil Procedure.

This matter comes before the court on the defendants' motion to dismiss the plaintiffs' first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules Of Civil Procedure. In opposing the motion, the plaintiffs submitted exhibits, several letters and affidavits for consideration by the court. By order dated March 15, 1996, the parties were apprised that because matters outside the pleadings had been presented to the court, pursuant Fed.R.Civ.P. 12(b), the defendants' motion to dismiss would be treated as a motion for summary judgment pursuant Fed. R.Civ.P. 56. The parties have been given reasonable notice and opportunity to present all material made pertinent to such a motion. The defendants' motion, which has been converted to a motion to summary judgment, will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c), summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. However, the existence of a factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists only where a reasonable finder of fact could make a finding in favor of the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (1986); *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine need for trial and summary judgment is proper. *Matsushita Elec. Indus. Co., Lt. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## RELEVANT FACTUAL BACKGROUND

The Wisconsin Department of Corrections (department) operates the Division of Intensive Sanctions (DIS) program, pursuant to Wis.Stat. § 301.048(1), which provides in pertinent part:

The department shall administer an intensive sanctions program. The department shall design the program to provide all of the following:

(a) Punishment that is less costly than ordinary imprisonment and more restrictive than ordinary probation or parole supervision.

(b) Component phases that are intensive and highly structured.

(c) A series of component phases for each participant that is based on public safety considerations and the participant's needs for punishment and treatment.

The statute directs that "[t]he department shall promulgate rules to implement this section." Wis.Stat. § 301.048(10).

The following criteria for program eligibility are set forth in Wis.Stat. § 301.048(2):

A person enters the intensive sanctions program only if he or she has been convicted of a felony and only under one of the following circumstances:

(a) A court sentences him or her to the program under s. 973.032.

(b) He or she is a prisoner serving a felony sentence not punishable by life imprisonment and the department directs him or her to participate in the program.

(c) The parole commission grants him or her parole under s. 304.06 and requires his or her participation in the program as a condition of parole under s. 304.06(1x).

(d) The department and the person agree to his or her participation in the program as an alternative to revocation of probation or parole.

Inmates in the DIS program are placed in one or more "component phases" which include options other than incarceration in a conventional prison facility and may also include being allowed to return to the general

society, with close monitoring.[1] . However, the statute directs that "the department shall operate the program as a correctional institution." Wis.Stat. § 301.048(4)(b) The department may also "discharge a participant from participation in the program and from departmental custody and control at any time." Wis.Stat. § 301.048(6).

Under the mandate of Wis.Stat. § 301.048(10), the department has promulgated regulations to implement the DIS program, which are codified as Wis.Admin.Code Chapter DOC 333. Under the regulations, an inmate may be terminated for any reason which, in the discretion of the department, is reasonably calculated to serve such interests as public safety or promoting a crime-free lifestyle. *See* Wis.Admin.Code DOC § 333.09(1)(c) and § DOC 333.01. The procedure for terminating an inmate from DIS is delineated in Wis.Admin.Code DOC § 333.10.

The department's Office of Offender Classification and DIS developed screening criteria concerning the administrative transfer of inmates from Type I prisons to DIS. (Affidavit of Mary M. Thompson [Thompson Aff.] ¶ 24). Such criteria concern inmates who were not directly sentenced to DIS. These screening criteria include "unsuitability" for DIS where the inmate is presently confined for an assaultive offense. (*Id.*)

The state legislature has given DIS a limited number of agents to supervise inmates. Because the legislature has mandated that DIS supervision be more restrictive than ordinary probation and parole, and because component phases of the DIS program are mandated to be intensive and highly structured, the ratio of inmates to a supervising DIS agent may be considerably lower than the ratio of probation and parole inmates to a regular supervising probation and parole

agent. The ratio of DIS inmates to a DIS agent is 23.69 inmates to one DIS agent. The ratio of probation and parole inmates to a regular probation and parole agent is 75 inmates to one agent. (*Id.* at ¶ 25).

The program's capacity to accommodate inmates not directly sentenced to DIS who administratively transfer from Type I prisons is further limited by the requirement that DIS accommodate inmates directly sentenced to DIS by courts, that DIS accommodate inmates who are granted parole conditioned upon DIS participation, and that DIS accommodate inmates who are placed with DIS as an alternative to probation or parole revocation. (*Id.* at ¶ 28). The DIS program is intended to accommodate certain inmates who would otherwise be serving terms of confinement in Type I prisons. There is inherent risk to the community in allowing such inmates to be placed in community based corrections programs rather than traditional prisons where their movements are tightly controlled and their living conditions are highly structured. (*Id.* at ¶ 26). Ms. Thompson avers that inmates with convictions for property offenses present significantly less risk to public safety than those inmates with assaultive offenses. (*Id.* at ¶ 29).

The defendant department's records for the plaintiffs in this action indicate that none of the plaintiffs is currently on probation or parole status, that each plaintiff is currently sentenced to a Type I prison, and that each plaintiff is confined to DOC custody on one or more felonies. (Thompson Aff. ¶¶ 19–20, Exh. 1–5). The defendant department's records also indicate that each plaintiff has one or more convictions for an assaultive felony, including 1st degree sexual assault, endangering safety by conduct regardless of life,

---

1. The DIS program is comprised of the following "component phases" as set forth in Wis.Stat. § 301.048(3):

(a) The department shall provide each participant with one or more of the following sanctions:

1. Placement in a Type 1 prison or a jail, county reforestation camp, residential treatment facility or community-based residential facility. The department may not place a participant under this paragraph for more

than one year or, if applicable, the period specified by the court under s. 973.032(3)(b), whichever is shorter, except as provided in s. 973.032(4).

2. Intensive or other field supervision.
3. Electronic monitoring.
4. Community service.
5. Restitution.
6. Other programs as prescribed by the department.

battery, and 2nd degree sexual assault with a child. (Thompson Aff. ¶ 21). Inmates with convictions for these crimes have not been administratively transferred to DIS for public safety reasons. (*Id.*)

A document dated March 24, 1995, produced by the defendant department's Division of Management Services, lists inmates admitted to DIS in calendar years 1993 and 1994. (Affidavit of Mark J. Rogers [Rogers Aff.], Exh. A). The document presented by the plaintiffs as Exhibit A, sets forth various information including the citation to the statutory offense of inmates, and the "offense description." Exhibit A also has a category "DIS status." (*Id.*)

Attorney Mark J. Rogers has reviewed Exhibit A attached to his initial affidavit and summarized the results of his examination. (Supplemental Affidavit of Mark J. Rogers [Rogers Supp. Aff.], ¶ 3). Exhibit 1 attached to his supplemental affidavit is a compilation of the results of this examination. (*Id.*) Exhibit 1 indicates that three inmates, James Powell, Daniel Young and Robbie Collins, were administratively transferred to the DIS program and that each of them was sentenced to an offense type listed on Exhibit 1 as "Violence." (Rogers Supp.Aff., Exh. 1 at 1, 3). The offense type of Robbie Collins is specifically listed as "Violence (Resist/Obstruct Officer)." (*Id.* at 3). James Powell was sentenced for robbery in violation of Wis.Stat. § 943.32(1)(B). (Rogers Aff., Exh. A at 5). Daniel Young was sentenced for "Sex Assault Child 1st Degree" in violation of Wis.Stat. § 940.225(1)(D) [sic]. (Rogers Aff., Exh. A at 22). Robbie Collins was sentenced for "Resist/Obstruct Officer" in violation of Wis.Stat. § 946.41. (Rogers Aff., Exh. A at 26).

Ms. Mary M. Thompson, the Deputy Administrator of the Division of Community Corrections who administers the DIS program, avers that she has examined plaintiffs' Exhibit A and it reveals that the large majority of inmates listed have property offenses indicated in the column entitled "Offense Description." (Thompson Aff. ¶ 33). Her examination of the document revealed only two inmates with assaultive offenses who have been administratively transferred from a Type I prison to DIS supervision. (Thompson Aff. ¶ 34).

One of these inmates, James E. Powell, who had an "offense description" of "robbery", was sentenced to DIS directly by a court on this charge. (Thompson Aff. ¶ 36). He was not an administrative transfer from Department of Adult Institutions (DAI) custody to DIS under Wis.Stat. § 301.048(2)(b). (*Id.*) The other inmate, Daniel J. Young, who has an "offense description" of "sex assault child 1st degree" is erroneously listed as being administratively transferred to DIS. (Thompson Aff. ¶ 37). However, the defendant department's records indicate that he was not administratively transferred to DIS from a Type I prison on this charge and is currently incarcerated in a Type I prison. (*Id.*) Her examination of the document does not indicate that any inmate convicted of an assaultive offense, with the exception of inmates directly sentenced to DIS, was administratively transferred from a Type I prison to DIS. (Thompson Aff. ¶ 39). Ms. Thompson does not address the status of inmate Robbie Collins.

Plaintiff Clapper has reviewed Exhibit A and made a summary of the results of his examination. (Supplemental Affidavit of Brian D. Clapper [Clapper Aff.] ¶ 14). He concluded that three inmates, Fred Morris, Robert Fernhout, and Thomas Mayo, with the offense descriptions of "Illegal Poss. of Firearm," have been convicted of felonies and have been transferred to the DIS program by the department. (Clapper Aff. ¶ 15). He states that possession of a firearm by a convicted felon is considered a violent offense under state law because of the threat that violence may occur. (*Id.*)

## ANALYSIS

The plaintiffs allege that, according to the state statute and regulations, they are eligible to participate in the DIS program. Plaintiffs read Wis.Stat. § 301.048(2)(b) as meaning that every person convicted of a felony who is not serving a life sentence is eligible for a transfer into the DIS program, and must be considered for placement in the program. The plaintiffs contend that despite their eligibility, corrections officials denied

them entrance into the program by promulgating additional rules for eligibility. They contend these rules require that DIS participants not be drug inmates and that DIS participants only be those inmates convicted of non-violent or property offenses. The plaintiffs have submitted documents to support their claim.

Plaintiffs also allege that in some cases the defendants have broken their own eligibility rules and allowed violent, assaultive or drug inmates to participate in the DIS program. The plaintiffs have also submitted documents which they contend show that at least some inmates with violent or drug related offenses have been transferred into the program.

The plaintiffs argue that enforcing additional eligibility rules which are not contained in the statute violates their rights. Plaintiffs contend that excluding violent felons from the program is not rational given the express legislative intent that all felons not carrying a life sentence be eligible for the program. Plaintiffs claim that allowing some inmates with violent offenses to participate, while denying the program to other inmates with similar offenses, also violates the plaintiffs' rights. Finally, the plaintiffs claim that defendants' actions violate Wisconsin law which prohibits agencies from establishing regulations which conflict with state statutes.

The defendants assert that, as a state agency, the Wisconsin Department of Corrections is not subject to suit under § 1983. Defendants also argue that plaintiffs' claims are based on alleged violations of state law and, therefore, are not cognizable under § 1983. They also contend that DIS is a new state program, that plaintiffs have ample avenues for challenging the program and its implementation in the state courts, and that state courts should have the first opportunity to rule on such issues.

Defendants assert that under the state statute, unless a person is sentenced to DIS by a court, is placed in the program by the parole commission, or is placed in the program as an alternative to revocation of probation or parole, a person is eligible for DIS participation only if the defendant department directs that person to participate in the program. They also contend that, under the statute, the defendant department was free to develop its own rules or guidelines for determining which inmates it would transfer to DIS. Defendants assert, therefore, that the defendant department could consider the nature of the offense of which the inmate was convicted and other related factors, such as the inmate's criminal record, in determining which inmates would be selected for participation in DIS.

Defendants also dispute plaintiffs' contention that inmates with assaultive or drug offenses have been transferred into the DIS program under Wis.Stat. § 301.048(2)(b). They assert that the documentary evidence submitted by plaintiffs is either incorrect, or that plaintiffs have misinterpreted the documentary evidence.

Defendants further contend that no inmate has a right to participate in DIS under the equal protection clause. They argue that along with their general policy of excluding violent or drug inmates from the DIS program, transfers to DIS are guided by consideration of numerous factors set out in Wis.Admin.Code DOC § 302.14. Defendants argue that, even if there have been exceptions to the general policy of excluding violent or drug inmates, plaintiffs have not shown themselves to be similarly situated to those inmates with respect to the characteristics used to determine DIS program participation. Finally, the defendants assert that, even if inmates similarly situated have been allowed into the DIS program, errors in carrying out a state program do not violate the Constitution.

The basis for plaintiffs' complaint is their belief that they are entitled to participate in the DIS program. To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980).

 Constitutional violations may stem from the deprivation of a protected liberty interest arising from state statutes or admin-

istrative regulations as well as federal law. *Williams v. Lane,* 851 F.2d 867 (7th Cir. 1988). However, 42 U.S.C. § 1983 addresses only violations of federal law and federally protected liberty interests, not violations of state procedures. *See Tavarez v. O'Malley,* 826 F.2d 671 (7th Cir.1987).

■ To create a federally protected liberty interest, the state regulation must concern issues or subjects which are sufficiently serious to merit constitutional protection. *Sandin v. Conner,* —— U.S. ——, —— – ——, 115 S.Ct. 2293, 2300–01, 132 L.Ed.2d 418 (1995). *Sandin* holds that state prison regulations will not ordinarily create a federally enforceable liberty interest and that courts should shift their focus away from the language of state regulations and toward considering the type of interest at stake. *See Williams v. Ramos, et al.,* 71 F.3d 1246, 1249 (7th Cir.1995).

■ The DIS program presents an alternative to traditional incarceration. It is well established that a prisoner has no liberty interest in remaining in the general population. *See Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *see also, Sandin,* —— U.S. at —— – ——, 115 S.Ct. at 2300–01. In fact, absent a constitutional, statutory, or regulatory bar, "a prisoner may be transferred for any reason, or for no reason at all." *Williams v. Faulkner,* 837 F.2d 304, 309 (7th Cir.1988), *aff'd sub nom. Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Additionally, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Felce v. Fiedler,* 974 F.2d 1484, 1490 (7th Cir.1992) (citing *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 [1979] ).

■ The section of the statute which governs eligibility for participation in the DIS program specifies that a person is not eligible for the program unless he or she has been convicted of a felony *and* presents one of four enumerated circumstances. *See* Wis. Stat. § 301.048(2). Those circumstances are: 1) a court sentence to the program, 2) being a prisoner serving a felony sentence not punishable by life imprisonment and a department directive that the prisoner participate in the program 3) parole by the parole commission requiring participation in the program, or 4) the department and the person agree to his or her participation in the program as an alternative to revocation of probation or parole. On its face, contrary to plaintiffs' assertions, the statute does not mandate that all felony prisoners without life sentences must be eligible to participate.

Unless an inmate is sentenced to the program by the court or required to participate in the program by the parole commission, or the department and the inmate agree to his participation as an alternative to probation or parole revocation, avenues not relevant here, participation in the DIS program is limited to those inmates who are directed to participate in the program by the defendant department. The section of the regulations cited by plaintiffs does not require the department to place any particular inmate in the program, even when the inmate is a model prisoner and meets all the other qualifications.

The requirement that a prisoner be serving a felony sentence not punishable by life imprisonment is a threshold requirement under § 308.048(2)(b). If an inmate meets this threshold requirement, the statutory language does not limit prison officials in determining which of these inmates should participate in the program. Plaintiffs have cited no section of the statute which specifies any objective criteria to be considered by prison officials in determining which inmates should be directed to participate in the program and which should not. *See Gilbert v. Frazier,* 931 F.2d 1581, 1582 (7th Cir.1991).

■ The legislature could have mandated in Wis.Stat. § 301.048(2)(b) that all felons not serving a life sentence be eligible for the program. However, the subsection provides the additional requirement that only those inmates the department directs to enter the program are eligible. It is clear that plaintiffs have no absolute right to participate in the DIS program. A straightforward, common sense reading of the statute does not support plaintiffs' claim that state law prohibits officials from excluding them from DIS

or, as a general rule, excluding inmates convicted of assaultive crimes or drug related offenses from DIS. Accordingly, this court concludes that the plaintiffs have not established that they have a federally protected liberty interest in being considered for transfer into the DIS program. Therefore, their due process claim is subject to summary judgment of dismissal.

The plaintiffs' other federal claim—that their exclusion from the program violates their right to equal protection—is likewise without merit. It is undisputed that the defendant department has a policy that inmates who are confined for an assaultive offense are deemed unsuitable for transfer to the DIS program. It is also undisputed that plaintiffs have been convicted of assaultive or violent offenses. The plaintiffs do not allege that they were sentenced for drug offenses. (*See* Amended Complaint, ¶ 3). The parties dispute whether the department has placed inmates in the DIS program under Wis.Stat. § 301.048(2)(b) who have been convicted of assaultive or drug offenses. However, even if the plaintiffs' factual position is correct, they have not established an equal protection violation.

■ To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Based on the parties' submissions, no plaintiff is serving a sentence for a drug offense. Therefore, no plaintiff can claim to be "similarly situated" to a felony drug offender who has been placed in DIS. Additionally, the plaintiffs have not contested defendants' claim that many factors, including the nature of the inmate's offense, are utilized to determine which inmates will be transferred to DIS. Plaintiffs have not shown that they are similarly situated to any DIS participants with respect to these other factors.

■ The plaintiffs assert that inmate Robbie Collins was convicted of "Violence (Resist/Obstruct Officer)" and was admitted to the DIS program, despite the defendant department's policy of excluding inmates who have committed assaultive offenses. Robbie

Collins is listed in Exhibit A as being an administrative transfer from a Type 1 prison to DIS. He is also listed as having been convicted of "Resist/Obstruct Officer" in violation of Wis.Stat. § 946.41.

Under Wis.Stat. § 946.41, the only felony of resisting or obstructing an officer is described in § 946.41(2m) which defines the offense as giving false information or placing physical evidence with intent to mislead an officer. Absent some factual detail regarding Robbie Collins' offense, the statutory crime itself does not constitute an assaultive offense.

■ Plaintiff Clapper has also identified three other inmates, Fred Morris, Robert Fernhout and Thomas Mayo, whom he asserts have been administratively transferred from Type 1 prisons to DIS. (Exh. A at 1, 6). Each of these inmates is listed as having been convicted of illegal possession of a firearm in violation of Wis.Stat. § 941.29. Section 941.29, Wis.Stat., forbids the possession of firearms by various categories of persons based on their prior conduct. It is a status crime, not an assaultive offense. Moreover, the plaintiffs' assertion that some inmates with violent or drug related convictions were allowed into the program indicates mere inconsistencies or erroneous decisions in prison management, which do not by themselves constitute a cognizable equal protection claim. *See Shango v. Jurich,* 681 F.2d 1091, 1103–05 (7th Cir.1982); *Durso v. Rowe,* 579 F.2d 1365, 1372 (7th Cir.1978).

■ Furthermore, "[t]o state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1220 (7th Cir.1994). Prisoners do not constitute a suspect class entitled to strict scrutiny of regulations or programs affecting them. *Pryor v. Brennan,* 914 F.2d 921, 923 (7th Cir.1990). Plaintiff Biskup, Heller, and Leifker concede that such classification does not involve a suspect class. *See* Brief of Plaintiffs Biskup, Heller, and Leifker in Opposition to Defendants' Motion for

Summary Judgment at 2. The plaintiffs present no reason for the court to conclude that inmates convicted of violent crimes such as themselves are a particular historically disadvantaged group.

 Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. *See Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Caldwell v. Miller,* 790 F.2d 589 (7th Cir.1986). Plaintiffs therefore must allege and subsequently prove that the general policy excluding inmates with assaultive offenses from DIS has no reasonable relationship to legitimate government interests.

Plaintiffs rely in part on *Durso v. Rowe,* 579 F.2d 1365 (7th Cir.1978). In that case, the plaintiff inmate's work release privileges were terminated without a hearing, although hearings were customarily provided to other inmates. The appellate court denied the defendants' motion to dismiss, holding that the plaintiff had stated a claim and should have been given an opportunity to present evidence. The appellate court concluded that *without some evidence in the record concerning the reasons for plaintiff's disparate treatment by state officials,* it was impermissible to conclude as a matter of law at that stage of the proceedings that there was no cognizable equal protection claim. *Id.* at 1372.

*Durso* is distinguishable from the instant case. In this case, plaintiffs have had ample opportunity to conduct discovery and submit evidence to the court to support their claim, but have failed to produce such evidence. Furthermore, unlike *Durso,* the general practice of the defendant department is to exclude inmates such as plaintiffs from the DIS program.

*United States v. Chrans,* 720 F.Supp. 115 (N.D.Ill.1989), upon which the plaintiffs also rely, is likewise distinguishable. In *Chrans,* a state inmate brought an action for a writ of habeas corpus alleging that he was denied bail pending appeal because he had committed a violent felony. The state offered no proof that it denied bail to all persons who were in the same position. The court in *Chrans* noted that this lack of proof raised the inference that the state acted arbitrarily or for illegitimate reasons in denying bail. The court ordered the state to hold a bail hearing within 30 days. Id. at 119.

Unlike *Chrans,* the plaintiffs in the present action base their claim on the alleged unconstitutionality of a general policy of denying DIS program eligibility to all inmates with assaultive or drug related offenses. Even accepting plaintiffs' claim that there have been some exceptions to this general policy, plaintiffs have failed to show anything more than mere discrepancies or isolated instances of error. Moreover, the statute itself vests authority in the defendant department to determine criteria for selecting inmates eligible for participation in the program.

The defendant department has established screening criteria concerning the administrative transfer of inmates, not directly sentenced to DIS, from Type I prisons to DIS. These criteria include unsuitability for DIS where the inmate is presently confined for an assaultive offense. The defendants have established that this determination is predicated on several factors. The legislature has allocated a limited number of agents for supervision of DIS inmates, and has also mandated that DIS supervision be more restrictive than ordinary probation and parole. The program's capacity to accommodate inmates who administratively transfer from Type I prisons is also limited by the requirement that DIS accommodate inmates directly sentenced to DIS by courts, inmates who are granted parole conditioned upon DIS participation, and inmates who are placed in DIS as an alternative to probation or parole revocation. The defendant prison officials also believe that inmates with convictions for property offenses present significantly less risk to public safety than those inmates with assaultive offenses.

Transfer to the DIS program allows the transferred inmate to have greater access to residential treatment facilities, community-

based residential facilities, intensive or other field supervision, electronic monitoring, community services, or other programs. Since these alternatives allow the inmate greater freedom and greater access to the community, it is reasonable for officials to consider the potential risks to community safety. It is also reasonable for prison officials to consider finite limitations on program resources and the other sources of DIS program participants in developing the criteria for inmates who will be deemed appropriate for transfer to the DIS program.

The defendants have established that department officials had legitimate and rational reasons for determining that inmates confined for assaultive offenses are unsuitable for the DIS program, and that the exclusion of such inmates from the DIS program furthers legitimate governmental objectives. Therefore, this court concludes that the plaintiffs have failed to establish a violation of their right to equal protection of the laws. *See Herro v. City of Milwaukee*, 44 F.3d 550 (7th Cir.1995); *DeTomaso v. McGinnis*, 970 F.2d 211, 214 (7th Cir.1992). The orderly operation of prisons has generally been committed to prison officials, not the federal court. Such matters are within the peculiar expertise of corrections officials and, therefore, the courts will generally accord great deference to their expert judgment, unless there is substantial evidence to argue against it. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See also Woods v. O'Leary*, 890 F.2d 883 (7th Cir.1989).

Plaintiffs have not established that it is unreasonable or irrational for prison officials to conclude that, because of the risks to community safety, inmates convicted of assaultive offenses are generally not appropriate candidates for the DIS program. An equal protection claim requires proof that the actions complained about were undertaken for reasons which were wholly unrelated to any legitimate state objective. *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir.1995). Even if some DIS inmates have convictions similar to those of plaintiffs, there is no evidence that the exclusion of plaintiffs from the program was wholly unrelated to a legitimate state objective. The plaintiffs have not presented any evidence which suggests improper motivation or the use of a criterion or characteristic not rationally related to legitimate governmental interests.

At this stage of the proceedings, plaintiffs have been given an opportunity to present such facts, and have failed to do so. Plaintiffs have not shown that different treatment based on the nature of an inmate's offense is unreasonable, particularly with respect to the DIS program that might lead to an early release from prison into the outside community. Accordingly, the defendants are entitled to summary judgment dismissing the plaintiffs' equal protection claim.

## CONCLUSION

Summary judgment is being granted to defendants on all federal claims. Where a plaintiff's federal claims are dismissed or otherwise resolved, it is within this court's discretion to dismiss any state law claims without a ruling on their merits, and it is the normal course to do so if the federal claims are dismissed before trial. *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir.1993). Accordingly, all claims in this action based solely on state law will be also be dismissed.

## ORDER

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that, because the court declines to exercise pendent jurisdiction where there are no remaining federal claims, any claims in this action based solely on state law be and hereby are **DISMISSED.**

**IT IS ALSO ORDERED** that the clerk of court enter judgment accordingly.